### In re DUCKER.

### In re F. B. SHUSTER CO.

#### (Circuit Court of Appeals, Sixth Circuit. January 11, 1905.)

#### No. 1,344.

1. CONDITIONAL SALES—MORTGAGES—STATE LAW.
    Under the law of Kentucky, a contract by which a bankrupt borrowed certain machinery from claimant under a written agreement reserving title in the claimant until the bankrupt paid certain prices specified therefor, etc., operated as an absolute sale of the machinery to the bankrupt, with a chattel mortgage back to secure the price.

2. SAME—FAILURE TO RECORD.
    Ky. St. 1903, § 496, provides that no deed of trust or mortgage conveying a legal or equitable estate to real or personal property shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deed shall be acknowledged or proved ac-

cording to law, and lodged of record. *Held*, that an unrecorded conditional sale of machinery to a bankrupt was void as to subsequent creditors without notice, and that such creditors were entitled to priority of payment from the proceeds thereof, though they had not acquired any lien on the bankrupt's property, other than that created by the bankruptcy proceedings.

Petition to Review an Order of the District Court of the United States for the Western District of Kentucky, in Bankruptcy.

For opinion of trial court, see 133 Fed. 771.

W. M. Smith, for bankrupt.

Benj. F. Washer, for trustee and creditors.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This case comes here on appeal from an order of the District Court, sitting in bankruptcy, which denied the priority of a lien claimed by the F. B. Shuster Company on certain goods which came to the trustee from the bankrupt. As the question involved is one of law, the facts being undisputed, and counsel for the appellee raising no objection to this mode of review, this court is disposed to exercise its appellate jurisdiction, treating the appeal as equivalent to a petition for review.

The facts, as stated in the brief of counsel for the appellant, which statement is conceded by counsel for the appellee to be correct, are as follows:

"On the 29th day of February, 1904, Alexander L. Ducker, trading and doing business in the city of Louisville, Ky., under the name of the Kentucky Wire Works, filed his voluntary petition in bankruptcy in the District Court of the United States for the Western District of Kentucky, sitting at Louisville. Fred Breyfogle was afterwards duly appointed trustee under said proceedings, and there was listed in the schedule of said bankrupt, among other things, certain property claimed by the F. B. Shuster Company, or, in the event that the specific property was not delivered it by the court, then it claimed a prior lien thereon. Said property claimed by the F. B. Shuster Company consisted of machinery, which is fully described in Exhibit G, filed with the petition of the F. B. Shuster Company in said case, which is found on pages 18 and 19 of the printed record. Said exhibit reads as follows:

"'New Haven, Conn., Jan. 11, 1904.

"'Kentucky Wire Works,
      "'Louisville, Ky.

"'Borrowed and received of the F. B. Shuster Company the following named articles, the same to remain the property of said The F. B. Shuster Company until such time as the price set against them shall be paid, as per memorandum in the margin, when they are to become the property of the borrower, Kentucky Wire Works, Louisville, Ky.

"'Notes and drafts, if given, are not to be considered as payment until they have been paid in cash.

"'The said borrower agrees to pay the price named, and in such manner as shall be stated in the margin, and, in the meantime, to keep the property in repair and sufficiently insured for the benefit of the said F. B. Shuster Company, and to permit them to enter and remove the same, if the payment is not made as herein agreed. In those States where the law requires it, this agreement shall be duly recorded.

"'Payments to be made: 2-months note, dated Jan. 15, 1904, with interest,

renewable every two months, provided one-sixth of amount of price of machine within and interest be paid at each and every maturity of note. $387.15.

| | |
|---|---|
| One ¼ inch 11-feet cut auto W. S. & C. machine, with counter-shaft, "Shuster" model .....................',................. | $347 50 |
| Extra 11-foot guide bar....................................... | 22 00 |
| Extra ⅛ inch arbor and bracket............................... | 22 00 |
| Two extra sets of tools, making machine capable of handling down to 1.16 inch wire..................................... | 12 00 |
| | $403 50 |
| Less 5 per cent............................................... | 20 18 |
| | $383 32 |
| Interest for 2 months at 6 per cent. per annum................... | 3 83 |
| | $387 15 |

" '[Signed]                                  Kentucky Wire Works,
                                          " 'A. L. Ducker, Prop.'

"Said exhibit shows, as the trial court determined, an absolute sale, with a mortgage back to secure the purchase money; that is, the contract entered into between the parties stipulated that the title to the merchandise should remain in the seller until the purchase price was paid, and power was given to the seller to retake possession of the property and remove it if it was not paid.

"In its original petition of interpleader, the Shuster Company claimed the specific property. This petition was filed on March 30, 1904. On April 16, 1904, it filed an amended petition, asking therein that if, in the opinion of the court, it is not thought that this petitioner retains the title to said property, then it states and charges that it does, in law, create a mortgage, and that thereunder it is entitled to a prior lien upon said property, and it prays that it be so adjudged.

"A demurrer was entered to this petition and amended petition of the Shuster Company, and the referee allowed the claim as a general claim, but sustained said demurrer to the petition and amended petition, and refused to allow said claim as a lien claim.

"Upon a petition for review, the District Court approved and confirmed said ruling of the referee, and directed that the funds arising from the sale of said merchandise claimed by the Shuster Company be administered, and that, in so doing, to see that the priority of the Shuster Company in the proceeds of said merchandise is subordinated to the payment of those creditors of the bankrupt whose debts were created subsequent to the delivery of that merchandise to the bankrupt, provided, however, that if, as to any such subsequent debts, the Shuster Company shall, in due season and in proper form, allege and prove that, at the time said debt or debts were so created, the creditors had notice of the Shuster Company mortgage, such creditors shall be postponed to the Shuster Company, and the referee is further directed, in the administration of said assets, to give to the Shuster Company a priority out of the proceeds arising from the sale of the mortgaged property claimed, over the creditors whose debts were created prior to the delivery of said mortgaged merchandise by the Shuster Company to the bankrupt, to all of which the said Shuster Company at the time objected and excepted."

To this statement the further facts should be added that the foregoing contract of sale was never recorded as required by the law of Kentucky applicable to chattel mortgages, and that there are creditors who became such after the vendee acquired the goods, and who are not shown to have had notice of the reservation of the title by the vendor.

The resultant question in the controversy depends upon the solution of two subordinates: First, what were the relative rights, in

respect to these goods, of the petitioner and of the creditors of the bankrupt, who became such after he acquired the goods, and before he was adjudged bankrupt? And, second, what were the rights of the trustee, as the representative of all the creditors, and of the petitioner, respectively, in the property sold by the petitioner to the bankrupt? The first question is to be determined by the law of Kentucky; the second, by the bankrupt act.

Section 496 of the Kentucky Statutes of 1903 declares that:

"No deed of trust or mortgage conveying a legal or equitable title to real or personal estate shall be valid against a purchaser for a valuable consideration, without notice thereof, or against creditors, until such deeds shall be acknowledged or proven according to law, and lodged for record."

It appears that, by the settled construction of this statute, such a contract as that between the petitioner and the bankrupt is the equivalent of a sale, and a mortgage back to the seller, and that, in its character of a mortgage, it is subject to the provisions of the statute just recited. Greer v. Church, 13 Bush, 430; Baldwin v. Crow, 86 Ky. 679, 7 S. W. 146; Manufacturing Co. v. Hart, 1 S. W. 414, 8 Ky. Law Rep. 223. And it further established that the "creditor" against whom the conveyance shall not be valid is one who becomes a creditor at a time when the appearance of ownership arising from the debtor's possession may have misled him into the giving of credit upon the faith of such ownership, and not one who became a creditor prior to the acquisition of the property by the debtor.

From these propositions it clearly follows that, before the adjudication of bankruptcy, the creditors, in whose favor the statute declared the mortgage void, had acquired a priority of right to have recourse against this property, not only as against the mortgagee, but also against those creditors as to whom the mortgage was not void. In these conditions the property passed under the dominion of the bankruptcy act, and the question now is whether, by the operation of that act, the creditors who had priority of right for the satisfaction of their debts out of the mortgaged property under the state law have lost it by the intervention of the bankruptcy proceedings. The court below held that they had not, and we concur in that conclusion.

In certain instances, which are distinctly specified in the act, what might otherwise be rights or privileges are suppressed in order to give way to the operation of the general purpose of a just and equal distribution of the bankrupt's assets. They are suppressed because they give unfair and inequitable advantages. But in other respects, and generally, it is foreign to the purposes of the act that it should operate to destroy rights or privileges lawfully acquired, whether of a legal or an equitable nature. On the other hand, the manifest intention is that they shall be recognized and protected. The estate of the bankrupt is devolved upon the trustee, subject to the rights of other persons therein. The substance in which those rights inhere is impounded. But except as before stated, it is the same substance, with the same incidents as before. The court takes it into its exclusive dominion and control, and, in harmony

with the general principle of law governing the exercise of juris-
diction in such cases, it accords to every person who has an inter-
est in the res the privilege of intervening and establishing his rights
in the thing which has been seized. It does no such iniquity as
to transfer from one who has done no act obnoxious to the law a
right which belonged to him, and give the fruits thereof to another,
who had no claim to it. Thus, in the present instance, a ruling that
these subsequent creditors no longer have the protection given
them by the statute would not only deprive them of the priority
which they have acquired, but would give the benefit of this depri-
vation to the secret lienholder, and the object of the statute is com-
pletely defeated. The trustee is the hand of the court. He stands
as its agent to liquidate the assets, to protect them, and bring them
before the court for final distribution. He is not, in fact, more
representative of one creditor or claimant than another. The trus-
tee, in the procedure, because he has the legal title to the assets,
and is charged with the duty of saving and protecting them, repre-
sents the general fund. He is not a purchaser, but as the title of
his office imports, he is trustee for all who have interests, and ac-
cording to those interests. He himself has no interest, and there
is nothing in his representation which stands between the court and
those who have interests, for the recognition and protection of
which they appeal to its authority. We have thus explained our
views upon this subject, founded, as they are, upon what we con-
ceive to be fundamental and controlling principles. Other courts,
for whose opinions we entertain great respect, have held, apparently,
somewhat different views on this subject.

In the case In re New York Economical Printing Co., 110 Fed.
514, 49 C. C. A. 133, the Circuit Court of Appeals for the Sec-
ond Circuit held, in a bankruptcy case, that only such creditors as
had taken steps to subject the mortgaged property by seizure in
legal proceedings could maintain their priority in respect of the
mortgaged property after the mortgagor had been adjudged bank-
rupt. This was so held because, as the court thought, the Court
of Appeals of the state had so settled the construction of the statute.
The Circuit Court of Appeals did not apparently consider the practica-
bilityof working out the right of the creditor in the bankruptcy court,
and we should have thought it doubtful whether the state court had
gone so far as to hold that a seizure under legal process must neces-
sarily be a seizure under the process of a court of law or of equity,
as distinguished from the court in bankruptcy, which has power
to seize the debtor's property, and subject it to the claims of
creditors according to their merit. And in the case In re Antigo
Screen Door Co., 123 Fed. 249, 59 C. C. A. 248, the Circuit Court
of Appeals for the Seventh Circuit, upon a review of the Wisconsin
decisions, held that, although the question had not been positively
determined, the trend of the decisions was to the effect that the cred-
itor, under the statute of that state, must have acquired a lien by
judicial process, in order to save his right to have recourse to the
mortgaged property; and the Circuit Court of Appeals held in ac-
cordance therewith. But the court found that by the law of Wis-

consin the mortgagee of an unfiled mortgage, by taking possession before the creditors had seized the property, would gain precedence over them, and in the case before the court the mortgagee had taken possession before the petition in bankruptcy was filed. The conclusion was stated by Judge Jenkins as follows:

"Assuming, then, that the filing of the petition in bankruptcy is, as stated in Mueller v. Nugent, supra [184 U. S. 1, 14, 22 Sup. Ct. 269, 275, 46 L. Ed. 405], in effect an attachment, and a seizure and sequestration of the property of the bankrupt for the benefit of his creditors, the fact remains that possession of the mortgaged property was taken by the mortgagee prior to the filing of the petition in bankruptcy, so that the case is not otherwise than that of possession taken before execution upon a judgment in favor of a creditor."

This is a distinct recognition of the equivalency of the seizure in bankruptcy with the seizure in other forms of legal proceeding. On the other hand, the Circuit Court of Appeals, in Re Pekin Plow Co., 112 Fed. 308, 50 C. C. A. 257, held that, notwithstanding the Supreme Court of Nebraska had construed the chattel mortgage of that state as meaning only to invalidate an unfiled mortgage in favor of those who had taken steps by legal process to assert their claims, yet that such claim might be made under the seizure of the court in bankruptcy, which is a seizure for all the creditors, whereon the property of the debtor is appropriated according to the right of each, and that this conclusion was in harmony with the doctrine of the state decisions. And in Chesapeake Shoe Co. v. Seldner, 122 Fed. 593, 58 C. C. A. 261, a like decision was made in reference to the effect of a statute of Virginia relating to conditional sales containing a reservation of the title until the price is paid, under which the possession is transferred to the vendee, and the contract of sale is not recorded. Such a reservation was declared void as to the creditors of the vendee. Upon an intervention by the vendor of certain goods, which had been conditionally sold to the bankrupt, it was held that, whether or not the creditors protected by the statute are only those who are taking steps to subject the property to their claims, still the seizure by the bankruptcy court was in effect an attachment of the property for the creditors of the bankrupt, whereon they are entitled to come in and establish their claims. And we think it proper, in passing, to say that we doubt whether, in the decisions of courts where such statutes are held to make void unfiled conditional sales or chattel mortgages, only such creditors are intended as secure protection by seizure under legal process, anything more is meant than that the statute comes in aid only when the creditor invokes it in a judicial proceeding taken before a paramount right of other persons has supervened. Until he comes into the forum, the conditions for the assertion of his right have not existed.

The question whether the Kentucky statute, when it declares such transactions to be invalid as to creditors, means only such creditors as have sued out process and levied upon the property, has never been decided by the Court of Appeals of that state. It was held in Cincinnati Leaf Tobacco Warehouse v. Combs, 109 Ky. 21, 58 S. W. 420, that an assignee for the benefit of creditors is neither

a purchaser for value nor a creditor, and takes the property subject to all the equities to which it was subject in the hands of his assignor, and that such equities may be enforced as if the assignment had never been made. Surely the reasons for such a rule are much more potent in the case of a seizure by the bankruptcy court.

An observation was made by Judge Du Relle in Wicks v. McConnell, 102 Ky. 434, 43 S. W. 205, which is much relied upon by appellee. In delivering the opinion of the court, the learned judge used this language:

"On the one hand, the unrecorded lien is upheld as against creditors who cannot be presumed to have given credit upon the faith of the property held in lien. On the other hand, creditors who may be presumed on such faith to have given credit are protected, as against the secret lien, in the rights which they secure by their diligence in the levy of their execution or attachment."

This observation was made in a case where the creditor had sued out an attachment, and was seeking to enforce his claim to priority as against the holder of the unfiled mortgage. It was not necessary to decide how the claim would stand if there had been no levy. No question of that sort was present or was agitated, and it is not at all probable that the learned judge had in his mind that question. However, if we are right in thinking that the seizure of the bankruptcy court, being a seizure for all the creditors, and involving the right to present such claims for allowance and satisfaction as the creditors had at the time of the seizure, was a seizure in a judicial proceeding, and the equivalent of an attachment, the statement of the judge would not be at all in conflict with the conclusions which we have formed upon the question.

But in the case In re Sewell (D. C.) 111 Fed. 791, Judge Cochran, of the Eastern District of Kentucky, adopted the foregoing statement in Wicks v. McConnell as the basis of his decision; taking it as the settled law of Kentucky. The case before him arose upon the intervening petition of one who had sold goods to the bankrupt upon a contract for retention of the title until payment of the price, which had not been filed, and there were subsequent creditors who had not seized the goods before the bankruptcy. The petitioner claimed a preference over the creditors by virtue of his mortgage. This was disallowed by the referee, but his decision was reversed by the court upon review; the learned judge being of opinion, apparently, that the creditors could not enforce their equity in the bankruptcy proceedings. We think he was in error in relying upon the statement in Wicks v. McConnell as settling the law of Kentucky for all cases where such a question might arise upon differing circumstances—as, for instance, such a case as Graham v. Samuel, 1 Dana, 166, where there had been no levy either by attachment or execution, but only an equitable lien acquired by the filing of a creditors' bill after the return of an execution unsatisfied. But we also think that in the Sewell Case the court failed to give due consequence to the effect of the proceedings in bankruptcy. The conditions are not the same as those of a case of an assignment for

the benefit of creditors, as in that case there is a mere devolution of the estate upon the trustee for collection and distribution. But the taking over of the bankrupt's estate by the District Court is much more than that. The assignee can exercise no judicial authority, and cannot determine conflicting claims. All his acts are purely ministerial. In respect to such acts the position of a trustee in bankruptcy is somewhat similar to that of a trustee under an assignment, except as the bankruptcy act imposes peculiar duties upon the trustee. But the trustee is the instrument of the court in the administration of the estate. For reasons which we need not repeat, we cannot assent to the rule adopted in the Sewell Case as one conclusive in the result, for we think there are super-added, in the bankruptcy proceeding, conditions which make it possible to give effect to the equity given to the creditor by the statute.

The subsequent creditors are not shown to have had notice of the mortgage. But they had parted with their property while the bankrupt was in possession and appeared to be the owner of the property, and while the mortgagee was at fault in not giving the notice required by the statute. In such circumstances, we think, if actual notice would have been the equivalent of the filing of the mortgage, it was incumbent on the mortgagee to prove that they had actual notice of the mortgage at the time they became creditors. 1 Jones on Mort. § 580; 21 Encycl. of Law (2d Ed.) 589; White v. McGarry (C. C.) 47 Fed. 420; Stout v. The Richard J. Carney Co., 53 Fed. 927, 4 C. C. A. 111; Gratz v. Land & River Imp. Co., 82 Fed. 381, 27 C. C. A. 305, 40 L. R. A. 393. And in Miles v. Blanton, 3 Dana (Ky.) 525, the court, though it did expressly declare the rule, treated the case as if the party alleging notice took the burden of proving it. And to that effect is Carr v. Callaghan, 3 Litt. 371.

The order made by the District Court in respect to the disposition of the proceeds of the goods sold to the bankrupt by the petitioner gives rank as follows: First, to the subsequent creditors; second, to the petitioner; third, to the antecedent creditors—with a proviso that the petitioner have leave to prove before the referee that the subsequent creditors had notice of the Shuster mortgage when their claims originated, and, in case such notice shall be proven at a hearing, those creditors shall be denied precedence of the Shuster mortgage, and shall rank with the other creditors. It was discretionary with the District Court to allow the hearing to be reopened to receive the further proof upon the subject indicated. The statute is construed by the Kentucky Court of Appeals as not giving protection to those who become creditors with actual notice of the mortgage.

We think the order conforms to the equity of the case, and it is therefore affirmed, with costs.