**In re CHRISTIAN LIFE CENTER, FIRST ASSEMBLY OF GOD OF SANTA ROSA, CALIFORNIA, a California nonprofit Corporation, Debtor and Debtor-in-Possession.**

**Bankruptcy No. 1–79–00779.**

United States Bankruptcy Court, N. D. California.

Nov. 2, 1981.

Timothy Fine, San Francisco, Cal., for a group of creditors.

Vincent O'Gara, San Francisco, Cal., for Creditors Committee.

Malcolm A. Misuraca, Santa Rosa, Cal., for Defense Committee.

## MEMORANDUM OF OPINION RE MOTION TO QUASH SUBPOENA AND SUBPOENA DUCES TECUM

CONLEY S. BROWN, Bankruptcy Judge.

In a hearing related to allowance of fees in the above case, the attorneys for the Defense Committee in the above case and companion litigation caused to be issued and served a Subpoena on the attorney for the Creditors Committee and certain members of the Creditors Committee demanding that they appear and testify and to bring with them all the records of the official Creditors Committee and all records of communications with Clyde C. Greco, Howard J. Barnhorst, II, and Timothy H. Fine in the Christian Life Center Bankruptcy Case.

Counsel for the Defense Committee has made allegations in the above case that there was a possible breach of duties by the counsel for the Creditors Committee. Essentially, that he may be seeking fees for work done for parties other than the Creditors Committee, and that his fees possibly should be questioned because of possible breach of duty. These allegations are set forth in Paragraphs Five and Six of a "Motion to Consolidate and Continue Section 331 Applications" filed with this Court on November 2, 1981. A copy is attached as Exhibit "A" as if set forth in full.

Attorney for the Creditors Committee indicates that pursuant to the Subpoena he would produce copies of all correspondence between himself and Mr. Barnhorst and Mr. Fine and two documents between himself and Mr. Greco in which parties other than himself or members of the Creditors Committee were the addressees or received copies. The attorney for the Creditors Committee indicates that he has numerous documents relating to communications between himself and official members of the Creditors Committee that fall into one or more of the following categories:

a. Agendas of the Official Creditors Committee Meetings;

b. Copies of minutes of the meetings of the Official Creditors Committee;

c. My attorney's notes of meetings of the Official Creditors Committee; and

d. Letters and memoranda to members of the Official Creditors Committee

Attorney for the Creditors Committee refuses to produce documents in those four categories on the bases of attorney-client privilege and attorney work-product privilege. This same position is taken by the members of the Official Creditors Committee who were subpoenaed.

■ As to the attorney work-product privilege the only matter that it can relate to is Counsel's Item Number "c" "My attorney's notes of meetings of the Official Creditors Committee." As to that category it is felt Counsel's position is well taken. The real question is, does an attorney-client privilege exist between the Creditors Committee set up pursuant to Chapter 11 of the Bankruptcy Code and the Committee's attorney.

The attorney for the Creditors Committee relies primarily upon claimed similarities in the cases of *In re Prudence-Bonds Corp.*, 76 F.Supp. 643 (E.D.N.Y., 1948) and *In re Scranton Corp.*, 37 F.R.D. 465 (N.D.Pa., 1965) and *In re LTV's Securities Litigation*, 523 F.Supp. 819 (E.D.Tex., 1981) and *Upjohn Company v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

In the *LTV* Case we have a case of alleged corporation mismanagement and the corporation was allowed the attorney-client privilege as against its own share holders, and this Court has no quarrel with that ruling but finds it does not apply to the situation where there are allegations of misconduct on the part of an attorney of the Creditors Committee.

In the *Upjohn* Case, the attorney-client privilege was allowed where a corporation was accused of wrongdoing which again is not the circumstance we have here.

In the *Prudence-Bonds* Case there is a totally unrelated circumstance in allowing an attorney-client privilege between a trustee and his counsel wherein the Trust Agreement provided that any action under the agreement by the trustee in accordance with the opinion of counsel shall be conclusive on the corporation and on all holders of Prudence-Bonds issued hereunder and the trustee would be fully protected in respect to any such action. The special master stated that it was his job to interpret the indenture and determine if the trustee's actions were right or wrong, and he did not think the opinion of counsel was material except for the fact that they might be material in exculpation of the trustee if he saw fit to offer them. The District Court approved of that statement. The case undoubtedly has no relevence to the one now pending before this Court.

■ In the *Scranton* Case a reorganization trustee was allowed the attorney-client privilege between himself and his special counsel relating to advice as to how the trustee should carry out his duties. In the *Scranton* Case the Court quoted from *In Re Ducker*, 6 Cir. 1905, 134 F. 43 which in part states "The trustee is the hand of the Court. He stands as its agent to liquidate the assets, to protect them and bring them before the Court for final distribution." This trustee is a mover and a shaker. He can cause things to be done as is differentiated between a Creditors Committee created pursuant to Section 1103 of the Bankruptcy Code. Section 1103(c) sets forth the powers and duties of Creditors Committees and essentially they can consult, investigate and recommend. Their participation is for the benefit of all creditors and their reports should be available to all creditors. In the legislative history, it pointed out that Section 1103(c) of the Code essentially follows Bankruptcy Act Rule 11–29(a) which also provided for the committee to report to the creditors concerning the progress of the case. It would thus seem where the committee does not have the power to act or the title of a trustee that it wouldn't need or deserve the attorney-client privilege since they should make their activities known to the other creditors and to the Court. If, however, it appears that the members of the committee acted contrary to their duties and contrary to the best

interests of the creditors wherein their acts might be determined illegal then they should not seek or be entitled to the protection of the attorney-client privilege but should rely on the protection of the Fifth Amendment by refusing to testify or produce documents on the grounds that it might tend to incriminate them.

■ There is, of course, no work-product privilege of the individual members of the Creditors Committee.

This Memorandum of Opinion wherein it sets forth facts and conclusions shall be determined to be the facts and conclusions of this case and order shall be entered accordingly.

## EXHIBIT A

MALCOLM A. MISURACA

MISURACA, BEYERS & COSTIN

900 College Avenue

Post Office Box 878

Santa Rosa, California 95402

Phone: (707) 545–0142

MIKE H. WELTY

RATCHFORD, SHORT & WELTY

141 North Street

Post Office Box 1006

Healdsburg, California 95448

Phone: (707) 433–4842

Counsel for the Christian Life Center Litigation Defense Committee

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN LIFE CENTER, FIRST ASSEMBLY OF GOD OF SANTA ROSA, CALIFORNIA, a California non-profit corporation, <br><br> Debtor and Debtor-in-Possession. | ) ) ) ) ) ) ) ) Case No. 1 -7900779 |

### Motion to Consolidate and Continue Section 331 Applications

The Christian Life Center Litigation Defense Committee moves for an order to continue all applications under Bankruptcy Code § 331 for attorney's fees and costs, now set for November 19, 1981, to a date convenient to the Court, when all applications of the same nature by the Defense Committee and its clients may be consolidated with the November 19 applications.

This motion is made on the following grounds:

1. On the motion of the Creditors Committee and the Church, the Court has limited the amount of money retained by the Church to cover administrative expenses to $500,000.

2. The Defense Committee argued unsuccessfully for retaining sufficient money to pay all reasonably foreseeable claims, including defense costs and a judgment in the Greco case.

3. The potential outcome and length of the Greco case dictate that there may not be sufficient funds on hand in the Church to pay all claims for administrative expenses and indemnity claims.

4. The Creditors Committee and the Church are attempting to have their claims heard before the Defense Committee, so that they may be paid regardless whether the sum retained by the Church is sufficient to pay all claims.

5. The Defense Committee has learned of several instances of actions by Vincent O'Gara that seriously question whether he has breached Bankruptcy Code § 1103(b). This section requires that the attorney for the Creditors Committee represent no one else in connection with the bankruptcy while he is in office.

6. O'Gara has committed at least the following breaches of his duties:

(a) He has appeared for and represented Clyde Greco in the Greco adversary proceeding.

(b) He has asserted non-existent privileges to enable Greco to refuse testimony on substantive aspects of the adversary proceeding.

(c) He has procured and sequestered documents of the Church relevant to the Greco case, organized them into an attempt to prove Greco's case, and furnished them to Greco's counsel.

(d) He has researched Greco's case against the Assembly of God Church and furnished that research to Greco for his private use.

(e) He has met and consulted with Greco's counsel on numerous occasions regarding the adversary proceeding.

(f) He has planned with Greco's counsel an attempt to disqualify the Hon. Conley S. Brown, while trying to conceal his role by advising Greco's counsel not to disclose his name.

(g) He has performed incompetently in the sale of the Church's assets, leading the Court into executing an exclusive right to sell listing with Susan Bird, which entitled her to a commission of $225,000 despite her failure to produce a buyer to minimum standards.

(h) He has ignored final orders of this Court. An example is the order for payment of the Defense Committee, which he did not obey for several weeks after it was final. He invested the Defense Committee's funds without their permission, and he caused the Church to pocket the interest thus earned.

(i) He has intimidated and browbeaten members of the Creditors Committee with claims that all of the Committee's meetings and deliberations were secret, when in fact they were not. He has attempted to eject from the Creditors Committee one member, Don Mallory, who disagreed with his partisanship to Greco.

(j) Claiming to believe that he had found "irrefutable proof" of fraud by Pastor Argue, he did not disclose his information to all the creditors, he did not insist that Greco enlarge his suit to benefit all creditors, and he did not ask leave to file a class action for all creditors. Instead, he aided and abetted Greco's case, which he knew was for the benefit of fewer than all the creditors he supposedly represented. He permitted and encouraged Greco to pursue a case that, if it had been successful, would have resulted in a permanent attachment that raised thirteen plaintiffs over all the other unsecured creditors.

(k) He professed to desire a "vigorous defense" of the Greco case, while secretly aiding Greco.

7. The Defense Committee, in default of anyone else, has uncovered this information and will pursue it when the Greco case is over. We will ask for subpenas of O'Gara's records and will ask to take his deposition and the depositions of others, including Don Mallory. There is not time in the middle of the Greco case to prepare for the hearing on O'Gara's compensation.

8. In the case of Dinkelspiel, Donovan & Reder, the services of Leslie Tchaikovsky appear to have been rendered in good faith, but in several areas were not competently performed. She appears to have given Mr. O'Gara free rein when, had she analyzed his ideas properly, she would have realized that they were not realistic or sensible. This is particularly true on the subject of Susan Bird, where O'Gara and Tchaikovsky combined to persuade the Court to execute the exclusive right to sell listing.

9. Therefore, the Defense Committee seeks the order described above.

Dated: November 2, 1981

Misuraca, Beyers & Costin

By /s/ Malcolm A. Misuraca
Malcolm A. Misuraca

Ratchford, Short & Welty

By /s/ Mike H. Welty
Mike H. Welty

Declaration of Malcolm A. Misuraca

I, Malcolm A. Misuraca, say:

1. I am one of the attorneys for the Defense Committee.

2. I have drafted the motion that appears above, and it is true of my own knowledge.

I declare under penalty of perjury that the foregoing is true and correct.

/s/ Malcolm A. Misuraca
Malcolm A. Misuraca

**40**

### Order

On the motion of the Christian Life Center Litigation Defense Committee, and good cause appearing, the Court makes the following order:

IT IS HEREBY ORDERED THAT the motions for payment of fees and expenses previously set in this matter for November 19, 1981, are removed from the Court's calendar, to be reset by the Court when all motions for fees and expenses, including those of the Defense Committee, may be heard together.

### PROOF OF SERVICE BY MAIL

I am a citizen of the United States and a resident of the County of Sonoma. I am over the age of eighteen years and not a party to this action. My business address is 900 College Avenue, Santa Rosa, California 95404.

On ____November 2____, 1981, I served

MOTION TO CONSOLIDATE AND CONTINUE SECTION 331 APPLICATIONS on the other parties in this action, by placing a true copy thereof, enclosed in a sealed envelope with postage fully prepaid, in the United States Post Office mailbox at Santa Rosa, California, addressed as follows:

Allen F. Corotto

Securities and Exchange Commission

450 Golden Gate Avenue

San Francisco, California 94102

Leslie Tchaikovsky

Dinkelspiel, Donovan & Reder

One Embarcadero Center, 27th Floor

San Francisco, California 94111

Vincent O'Gara

601 Montgomery Street

Suite 1410

San Francisco, California 94111

I declare under penalty of perjury that the foregoing is true and correct.