**In the Matter of BALDWIN–UNITED CORPORATION, D.H. Baldwin Company, et al., Debtors and Debtors in Possession.**

**Bankruptcy 1–83–02495.**

United States Bankruptcy Court,
S.D. Ohio, W.D.

Feb. 29, 1984.

 

Baker & Hostetler, Joseph Patchan, Cleveland, Ohio, for Baldwin-United Official Unsecured Creditors Committee.

Thomas Rose, F.D.I.C., Washington, D.C., for Federal Deposit Ins. Corp.

Calfee, Halter & Griswold, Mark Wallach, Cleveland, Ohio, for First Nat. Bank of Chicago.

Milbank, Tweed, Hadley & McCloy, David Frauman, New York City, for D.H. Baldwin Unsecured Creditors' Committee.

## ORDER

RANDALL J. NEWSOME, Bankruptcy Judge.

Notwithstanding the passage of some five months since the date of filing, this Court is once again confronted with an organizational dispute in these Chapter 11 cases. The present controversy centers upon the composition of the Baldwin-United Official Unsecured Creditors' Committee ("BUCC").

On December 14, 1983 counsel for BUCC filed a motion to amend the Court's order appointing the committee. As presently structured, BUCC consists of eight voting members, two ex officio non-voting members, and two non-voting invitees (See Appendix A, attached).

The voting and ex officio non-voting members of the committee were first nominated for their positions during a status conference held in these cases on October 14, 1983. At that time the Court was informed that a lengthy caucus among the Baldwin-United unsecured bank creditors had taken place on October 7, and that the present membership of BUCC, as well as the D.H. Baldwin Official Unsecured Creditors' Committee, ("DHBCC") received approval from all (or almost all) interests represented at that meeting. (Transcript of October 17, 1983 status conference, pgs. 29–62).

The problem addressed in the present motion arose shortly after counsel for BUCC was appointed. Specifically, BUCC seeks to eliminate ex officio non-voting members from the committee, and to reclassify them as invitees. The motion is strenuously opposed by both of the non-voting members, First National Bank of Chicago ("FNBC") and the Federal Deposit Insurance Corporation ("FDIC").

The voting members assert that non-voting members are not "necessary" to the workings of the committee, because their non-voting status deprives them of a major incident of committee membership, and ac-

804

cordingly that their presence during meetings with the committee's counsel might be deemed a waiver of the committee's attorney/client privilege. The voting members of the BUCC also assert that the FDIC cannot serve as a committee member under any circumstances, because it is not a "person" as defined in 11 U.S.C. § 101(30) and thus is not eligible for appointment under 11 U.S.C. § 1102(b)(1).

FNBC counters by arguing that the attorney/client privilege is not available to a creditors' committee, and that even if it is, FNBC's presence as an ex officio non-voting member during meetings with counsel will not endanger the privilege. The FDIC joins in the bank's arguments, and further asserts that nothing in § 1102(b)(1) prevents it from serving as a non-voting member on the committee.

Counsel for DHBCC has filed an amicus brief inviting the Court to ignore the privilege issue and hold that all of the members of BUCC are entitled to the same rights, regardless of whether they vote or not. ▮▮▮ We find counsel for DHBCC's invitation an enticing one, primarily because of the vacuum in which the privilege question has been raised by BUCC. At present, BUCC's concerns for protecting allegedly privileged communications is more imagined than real, since no concrete dispute regarding disclosure of information has been presented. A determination of whether the privilege attaches to a particular communication is primarily a question of fact which cannot be decided in the abstract. *Trammel v. United States*, 445 U.S. 40, 47, 100 S.Ct. 906, 910, 63 L.Ed.2d 186 (1980). The privilege does not attach to all communications between an attorney and his client, but only as to those which fall within the well-established parameters of the rule:

The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358-59 (D.Mass.1950).

*See also, Foseco International Ltd. v. Fireline, Inc.*, 546 F.Supp. 22, 24 (N.D.Ohio 1982) (Contie, D.J.).

▮▮▮ It is equally well-established that the privilege is to be narrowly construed, since it stands as an exception to the policy favoring full disclosure and discovery of all facts in the pursuit of truth. *United States v. Goldfarb*, 328 F.2d 280, 282 (6th Cir.1964).

While we harbor considerable concern in undertaking an analysis of the attorney/client privilege under the circumstances presented, the nature of the parties' dispute makes such an analysis unavoidable. *Cf. Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

Thus we must first determine whether communications between counsel and a creditors' committee, which meet all of the *United Shoe* criteria are protected from disclosure by the attorney/client privilege. Counsel for FNBC and FDIC argue that the privilege is inimical to the very purposes of a creditors' committee. Such committees are established not merely to represent the creditors in the negotiation of a plan, but to provide them with ready access to information regarding the debtors' affairs.

▮▮▮ While we are cognizant of the fiduciary responsibilities which a creditors' committee owes to those it represents, we are unconvinced that the attorney/client privilege is inherently antagonistic to those responsibilities. The purposes underlying

the privilege have no less applicability to a creditor's committee than they do to any other entity, at least when disclosure of privileged communications is sought by those who are not represented by the committee, or who stand in an adversarial relationship with it. If the committee cannot engage in "full and frank communications" with its attorneys without fear of disclosure to such outsiders, then its work may be seriously hampered, to the detriment of those it represents. *See, Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). To the extent that *In re Christian Life Center*, 16 B.R. 35 (Bkrtcy.N.D.Cal.1981) forecloses the assertion of the privilege by a creditors' committee under all circumstances, we respectfully decline to follow that decision.[1]

 While the privilege may be absolute as to those who are not represented by the creditors' committee, we believe that a narrower construction of the privilege is required where disclosure is sought by those who are so represented. As was noted in *Valente v. Pepsico, Inc.*, 68 F.R.D. 361, 370 (D.Del.1975):

A fiduciary owes the obligation to his beneficiaries to go about his duties without obscuring his reasons from the legitimate inquiries of the beneficiaries.

██ The fiduciary relationship between the committee and those it represents requires a balancing of the injury resulting from disclosure with the interest of those whom the committee represents in obtaining information. The fiduciary duties involved here are not unlike those of a corporation to its shareholders, or of controlling shareholders to minority shareholders. *Maggiore v. Bradford*, 310 F.2d 519, 521 (6th Cir.1962).

Where shareholders have sought disclosure of privileged information from a corporation in shareholder derivative suits, many courts have held that the privilege is available to the corporation "subject to the right of the stockholders to show cause why it should not be invoked in the particular instance." *Garner v. Wolfinbarger*, 430 F.2d 1093, 1103–4 (5th Cir.1970), *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971). *See also, Panter v. Marshall Field & Co.*, 80 F.R.D. 718, 723 (N.D.Ill.1978); *Broad v. Rockwell International Corp.*, [1976–77 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 95,894 (N.D.Tex. 1977). This same rule has been applied in cases involving other types of fiduciary relationships. *Quintel Corp., N.V. v. Citibank, N.A.*, 567 F.Supp. 1357, 1363 (S.D.N.Y.1983) (defendant bank acting as fiduciary for plaintiff in a land purchase); *Donovan v. Fitzsimmons*, 90 F.R.D. 583 (N.D.Ill. 1981) (rule applied to pension fund trustees); *Valente v. Pepsico, Inc.*, 68 F.R.D. 361 (D.Del.1975) (minority shareholders seeking information from majority shareholder).

The *Garner* doctrine strikes the appropriate balance between the creditors' right to information and the committee's need for confidentiality, and accordingly we find it applicable to requests by creditors for privileged information from the committee which represents them.

However, because of the nature of the relationship, the creditors' dependence upon the committee for information, and the underlying purposes of a creditors' committee, we believe that the committee should bear the burden of establishing good cause for not disclosing privileged information to its constituent creditors. *Valente v. Pepsico, Inc., supra*, at 367.

██ In so holding, we hasten to add that there may be sound policy reasons for nondisclosure which do not implicate the attorney/client privilege. Such situations may be dealt with on a case-by-case basis, so as to "adequately protect the interest of both fiduciaries and beneficiaries." *Valente v. Pepsico, Inc., supra* at 370. As Judge

---

1. We certainly have no quarrel with the Court's holding under the facts outlined in *Christian Life,* since the privilege can never be asserted as a shield to protect against disclosure of fraud or other misconduct on the part of the committee or its attorneys. *See, e.g., In re Blier Cedar Co., Inc.*, 10 B.R. 993, 999 (Bkrtcy.D.Me.1981).

McAllister noted in *Franklin Life Insurance Co. v. William J. Champion & Co.*, 353 F.2d 919, 922 (6th Cir.1965); *cert. denied*, 384 U.S. 928, 86 S.Ct. 1445, 16 L.Ed.2d 531 (1966):

> Where it is the policy of the law to throw its protection around knowledge gained or statement made in confidence, it will find a way to make that protection effective by bringing within its scope the testimony of those whose participation in the confidence is reasonably required. (citation omitted)

■ Having found that BUCC is entitled to the protection afforded by the attorney/client privilege, we must next determine whether the presence of non-voting members during discussions between the committee and its counsel acts as a waiver of the privilege. We find that non-voting members are no less "necessary" to the workings of the committee than are voting members, and accordingly that their presence in no way threatens the privileged nature of communications with counsel.

We need look no further than the holding in *Upjohn v. United States*, 449 U.S. 383, 397, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981) to reach this conclusion. In essence, counsel for BUCC would have us apply the "control group" test, which was specifically rejected in *Upjohn*, and hold that only voting members control the committee's decision making process. We find this contention unsupportable both as a matter of fact and law. FNBC is an indenture trustee for some $180 million in debentures issued by Baldwin-United Corporation. It opted for the status of a non-voting member in order to avoid a conflict of interest between its fiduciary duties to the debenture holders and its fiduciary duty as a committee member. Given the substantial interests which FNBC represents, it can hardly be asserted that their non-voting status makes their input as a committee member unnecessary to the committee's counsel in rendering legal advice, or that it should be considered a "stranger" to the committee. Certainly *Upjohn* requires a contrary result.

■ The FDIC's membership on the committee presents a far more serious problem. Section 1102(b)(1) states that "[a] committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the *persons*, willing to serve, that hold the seven largest claims against the debtor ..." (emphasis added). A "person" as defined in § 101(30) "includes individual, partnership, and corporation, *but does not include governmental unit.*" (emphasis added)

The FDIC attempts to sidestep this clear statutory language by asserting that it only precludes a governmental unit from acting as a *voting* member of a committee. We find nothing in the Code or the legislative history to support this view. To the contrary, the legislative history clearly expresses Congress' intent to preclude governmental units from holding membership on a creditors' committee in any capacity:

> The court is restricted to the appointment of persons in order to exclude governmental holders of claims or interests. House Report No. 95–595, 95th Cong., 1st Sess. 401 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

This legislative mandate was followed by the Courts which have spoken on this issue (*In re Mansfield Tire & Rubber Co.*, 39 B.R. 974 (N.D.Ohio, 1983); *In re American Atomics Corp.*, 2 B.R. 526 (Bkrtcy.D.Ariz. 1980)), and this Court will follow it as well.

Based on the above, BUCC's motion to amend this Court's Order appointing the committee is GRANTED, insofar as it seeks to remove the FDIC from the committee and reclassify it as an invitee; the motion is DENIED insofar as it seeks to remove FNBC from the committee and reclassify it as an invitee.

IT IS SO ORDERED.

### APPENDIX A

The Official Unsecured Creditors' Committee of Baldwin-United Corporation:

VOTING

| | Alternates |
|---|---|
| Mr. Irving Harris<br>The Algonquin Trust<br>Porter, Wright, Morris & Arthur<br>1650 Atrium One<br>201 East Fourth Street<br>Cincinnati, Ohio, 45202 | Mr. Jeffrey Harris |

**Alternates**

| | |
|---|---|
| Mr. William C. Thomas<br>California First Bank<br>503 B Street<br>San Diego, California, 92101 | Mr. William L.<br>Stringham |
| Mr. Jeffrey Harris<br>The Camargo Trust<br>Porter, Wright, Morris & Arthur<br>1650 Atrium One<br>201 East Fourth Street<br>Cincinnati, Ohio, 45202 | Mr. Irving Harris |
| Mr. F. Hall Webb<br>Chemical New York Corporation<br>c/o Chemical Bank<br>277 Park Avenue<br>New York, New York, 10172 | Mr. Donald A.<br>Delaporte |

Mr. Robert Greene
AmeriTrust Company
900 Euclid Avenue
Cleveland, Ohio, 44101

Mr. Gary Sieveking
First National Bank of Louisville
P. O. Box 36000
Louisville, Kentucky, 40232
 --or--
101 South Fifth Street
8th Floor
Louisville, Kentucky, 40232

| | |
|---|---|
| Mr. Robert Lowrie<br>The Indiana National Bank<br>One Indiana Square<br>Indianapolis, Indiana, 46266 | Mr. J. Frederic<br>Wiese, Jr. |
| Mr. William F. Martson, Jr.<br>The Niskanen Interests<br>Tonken, Torp, Galen, Marmaduke<br>& Booth<br>1800 Orbanco Building<br>1001 S.W. First Avenue<br>Portland, Oregon, 97204 | Mr. Grant Stelmer |

### EX OFFICIO NON–VOTING

Mr. Thomas Rose
The Federal Deposit Insurance Corporation
550 17th Street N.W.
Washington, D.C. 20429

| | |
|---|---|
| Mr. John R. Grimes<br>The First National Bank of Chicago<br>One First National Plaza, 0126<br>Chicago, Illinois, 60670 | Mr. Marshall L.<br>Zissman<br>Mr. Robert V.<br>Herbert |

### NON–VOTING INVITEES

Vernon Teofan, Esq.
Insurance Commissioner of Arkansas
c/o Freytag, Marshall, LaForce, Rubenstein
 Stutzman & Teofan
1800 Skyway Tower
Dallas, Texas, 75201

Emil J. Molin
Deputy Rehabilitator
Insurance Commissioner of Indiana
c/o University Life Insurance Company
P. O. box 68215
3500 DePauw Boulevard
Building No. 3, 11th Floor
Indianapolis, Indiana, 46268