OPINION OF THE COURT
C. Raymond Radigan, J.
In these proceedings the surviving spouse moves for an order compelling the production of certain documents and a protective order regarding discovery sought by the fiduciaries.
The decedent, George Baker, died on December 11, 1977, leaving a last will and testament dated July 10, 1970, which has been admitted to probate. On November 8, 1986, the surviving spouse, Kim Campbell, commenced proceedings to compel the executors/trustees, George Baker, III and Charles Dunn, to account, for a construction of the will, and for a decree revoking letters testamentary and letters of trusteeship. Prior to the return date of the petition for an accounting, the fiduciaries filed a voluntary account as executors and trustees of the marital trust created under the decedent’s will. The fiduciaries then moved for an order dismissing the proceedings for construction and for removal of the fiduciaries and for an order dismissing the petition for an accounting to the extent that it related to the nonmarital trusts.
The decision of September 11, 1987 (Estate of Baker, NYLJ, Sept. 22, 1987, at 15, col 4) converted the motion to dismiss the petition for a construction to a motion for summary judgment (CPLR 3211 [c]) and granted summary judgment to the executors of the estate, determining that the marital trust was a pecuniary not a fractional bequest. In a subsequent decision (Nov. 13, 1987) the court denied the remaining requests for relief in the motion to dismiss with the exception of the question of attorneys’ fees, which was held in abeyance pending an appeal.
The spouse’s motion to compel disclosure was served on October 20, 1987. In conferences with the parties the court made rulings with regard to disclosure as follows which it adheres to:
The spouse is entitled to: (1) the decedent’s income tax returns for the years 1974, 1975 and 1976; (2) all powers of attorney executed by the decedent; (3) all trust agreements of which the decedent was a settlor, beneficiary or trustee; (4) all agreements relating to the final settlement of accounts for trusts, terminating upon the decedent’s death, and (5) docu *575 ments reflecting the financial or tax consequences of the "swap” of 515 acres of Horseshoe.
Disclosure of the following items is denied at this time without prejudice to a renewed application: (1) information relating to the wealth of the decedent’s children, and (2) documents relating to the payment by George F. Baker, III of his commissions to Baden.
There are remaining issues relating to disclosure which must be addressed.
It is alleged by the surviving spouse that the production by the attorneys for the fiduciaries of a document dated June 6, 1985 waived the attorney-client privilege and entitles the spouse to disclosure of other privileged communications on the same subject. Although the disclosure is described as "inadvertent” the affidavits submitted by or on behalf of the fiduciaries do not state that the disclosure was accidental. Rather it is alleged that disclosure did not constitute a waiver because: (1) the fiduciaries did not expressly consent to the disclosure, and (2) litigation had not yet been commenced. Alternatively, the fiduciaries request that the documents in question be reviewed in camera to determine whether they relate to the same subject as the memorandum.
The memorandum which is the subject of the alleged waiver is described as an "internal memorandum” prepared by the firm of Bienstock, Friedman, Frank & Grossman, former attorneys for the fiduciaries. It was furnished by the Biepstock firm in July 1985. The memorandum analyzes the circumstances under which capital gains treatment would be available to the estate upon the sale of Horseshoe Plantation, a major asset of the estate. In these proceedings the spouse alleges that Horseshoe Plantation was intentionally undervalued by the fiduciaries and that they refused to fund the spouse’s marital trust with a portion of Horseshoe in order to allocate its current and future value to other beneficiaries of the estate, including one of the fiduciaries. Additionally, it is alleged that the fiduciaries intentionally delayed the administration of the estate for the purpose of achieving the results set forth in the memorandum. The spouse contends that the memorandum discloses the fiduciaries’ knowledge of the potential value of Horseshoe and divulges a motive for delaying the administration of the estate.
A memorandum prepared in anticipation of litigation which reflects an attorney’s opinion, analysis, theory or strategy is *576 protected from disclosure under the work product privilege (CPLR 3101 [c]; Hickman v Taylor, 329 US 495). Here it is not alleged that the July 6, 1985 memorandum is entitled to this immunity. In addition, confidential communications between attorney and client made for the purpose of obtaining professional legal advice are protected from disclosure under CPLR 3101 (b) and CPLR 4503.
The attorney-client privilege does not necessarily apply to a legal memorandum prepared by counsel for circulation within the firm as it is not a communication directed to the client (Sneider v Kimberly-Clark Corp., 91 FRD 1; SCM Corp. v Xerox Corp., 70 FRD 508). Such a memorandum is protected by the privilege only where it reveals a communication imparted by the client with the intention of confidentiality (3A Weinstein-Korn-Miller, NY Civ Prac f 3101.45). As a practical matter, the likelihood is that a legal memorandum will reveal such a communication (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3101:28, at 32) either directly or indirectly. In any event, the parties, by implication, appear to be in agreement that the memorandum does reveal a confidential communication.
The effect of disclosure of a document protected only by the work-product privilege is significantly different than the effect of a disclosure which amounts to a waiver of a document protected by the attorney-client privilege. The disclosure of a document protected by the work-product rule does not result in a waiver of the privilege as to other documents (3A Weinstein-Korn-Miller, NY Civ Prac ¶ 3101.45). The waiver of the attorney-client privilege, however, normally compels the production of other documents protected by the privilege which relate to the same subject (Permian Corp. v United States, 665 F2d 1214; Handgards, Inc. v Johnson & Johnson, 413 F Supp 921).
If the document is privileged, then the court would be required to determine whether the disclosure by the attorney as distinguished from the client resulted in a waiver thereby permitting access to other related documents. The threshold question is whether the privilege should apply at all as between fiduciaries and beneficiaries of an estate. There is authority both applying the privilege and authority denying it under such circumstances.
The attorney-client privilege has been held to be unavailable to a fiduciary on the grounds that: (1) the privilege should *577 not be asserted against those for whose benefit the legal advice is sought, and (2) both the fiduciary and the beneficiaries are the clients of the attorney and the privilege may not be asserted between clients who consult an attorney on a matter of common interest. In Garner v Wolfinbarger (430 F2d 1093, cert denied sub nom. Garner v First Am. Life Ins. Co., 401 US 974) the court applied both theories to require a corporation to disclose attorney-client communications to the stockholders of the corporation upon a showing of good cause. Subsequent decisions have likewise required disclosure in stockholders’ actions (Valente v Pepsico, Inc., 68 FED 361; Bailey v Meister. Brau, 55 FED 211) and actions by a beneficiary or his representative against the administrator or trustee of a pension fund (Helt v Metropolitan Dist. Commn., 113 FED 7; Petz v Ethan Allen, Inc., 113 FED 494; Donovan v Fitzsimmons, 90 FED 583).
Conversely, other cases reject the theory that there is an attorney-client relationship between counsel for a fiduciary and the beneficiaries (Matter of Johnson, NYLJ, May 2, 1984, at 11, col 3; In re Chase Manhattan Bank, NYLJ, Oct. 13, 1972, at 2, col 4, affd NYLJ, Feb. 7, 1973, at 2, col 1; In re Prudence-Bonds Corp., 76 F Supp 643).
This court is of the opinion that a fiduciary has an obligation to disclose the advice of counsel with respect to matters affecting the administration of the estate (2A Scott, Trusts § 173 [4th ed]). This is subject to the limitation that the fiduciary should have the protection of the privilege when litigation has commenced or is anticipated (2A Scott, Trusts § 173 [4th ed]; see, In re LTV Sec. Litig., 89 FED 595). Certainly, the fiduciary is entitled to the benefit of counsel in the preparation of his defense in a contested accounting or other proceeding.
Therefore, it must be determined whether the legal memorandum in question was prepared in connection with pending or anticipated litigation. This requires not only an examination of the document but the surrounding circumstances. The spouse did not file her petition until November 1986. The fiduciaries were presumably on notice that litigation was contemplated, no later than the date upon which each received a letter dated June 17, 1985, from the attorneys for the spouse. The letter expressed the spouse’s dissatisfaction with the management of the estate, demanded an accounting, and stated "If we do not receive the requested accountings and other materials within the indicated time frame, however, we *578 will institute judicial proceedings for compulsory accountings.”
However, the memorandum, which is dated 11 days prior to the letter, does not appear to have been drafted in anticipation of a proceeding for a construction of the will or removal of the fiduciaries or a proceeding to compel an accounting. Indeed, the spouse alleges that the memorandum is a legal analysis of the means by which the fiduciaries could achieve a goal set at earlier stages in the administration of the estate.
Accordingly, the court finds that the memorandum is not a document protected by the attorney-client privilege as between the fiduciaries and beneficiaries of the estate. Therefore, disclosure of the memorandum to the attorneys for the spouse did not waive the attorney-client privilege as to other documents protected by the privilege.
However, the spouse may be entitled to disclosure of the documents listed in exhibit E to the affidavit of Charles Berry, Esq., dated October 20, 1987, for the same reason that the memorandum is subject to disclosure. That is, the documents may not be entitled to the protection of the privilege in the first instance. The court will review the documents in camera to determine whether the spouse is entitled to disclosure.
Another issue raised is whether the executors and trustees are required to disclose records of the estate which they allege are held by them as individuals not fiduciaries.
Records which belonged to the decedent are not the property of the fiduciary; they are the personal property of the estate. The fiduciary receives title to all personal property of the decedent but such title is merely in trust for the beneficiaries (2 Butler, New York Surrogate Law & Practice § 1323). The spouse is entitled to disclosure of records relating to Horseshoe which were created prior to the decedent’s death.
Records created during the administration of the estate must be made available to the spouse in accordance with the fiduciaries’ duty of full disclosure (Matter of Murray, 195 Misc 2d 629) whether or not the fiduciaries actually "used or reviewed” the records.
The spouse seeks records of the estate of Edith Kane Baker which are in the custody of George F. Baker, III or others. While the decision of May 20, 1987 determined that the spouse was entitled to the examination of George F. Baker, III under SCPA 2211 and CPLR article 31 this did not include the examination of George F. Baker, III as executor of the estate *579 of Edith Kane Baker. George F. Baker, III is not a party to these proceedings in his capacity as executor of the estate of Edith Kane Baker. However, the court can compel disclosure of documents by George F. Baker, III in that capacity as a nonparty (CPLR 3120 [b]) and accordingly, he is directed to produce documents relating to Horseshoe Plantation. .
Accordingly, the motion to produce is granted to the extent that George F. Baker, III and Charles Dunn are directed to produce all of the records of the estate of George Baker, Jr., in their custody and control and George F. Baker, III is directed to produce records relating to Horseshoe Plantation which are in his custody and control as executor of the estate of Edith Kane Baker.
The spouse seeks a protective order regarding a notice for discovery of documents dated November 9, 1987, which seeks information regarding her personal finances. Items 15 through 17 which request factual support for the allegations in the petition are in the nature of a demand for bill of particulars. The fiduciaries have failed to establish that all items in the notice are relevant to the issues raised in these proceedings with the exception of items No. 4, No. 5 and No. 18 to the extent of completed sales of personal property located at Horseshoe and completed sales of property devised or bequeathed to the spouse under the decedent’s will.
An additional issue concerns the priority of examinations. While conceding that they have no right to examinations in the accounting proceeding until objections have been filed, the fiduciaries allege that they have priority in the removal proceeding pursuant to CPLR 3106. In a decision dated May 26, 1987 the court determined that the spouse was entitled to the examination of the fiduciaries under SCPA 2211 and CPLR article 31 pursuant to a prior notice served by the spouse. These examinations encompass all matters relating to the administration of the estate including issues involving alleged misconduct which form the basis of the petition for removal. Since it would be impossible to excise the removal issues from the scope of the accounting examinations of the fiduciaries it is not practical to give the fiduciaries priority in the removal examinations.
Accordingly, the spouse’s motion for protective order is granted with the exception of items No. 4, No. 5 and No. 18 in the notice for discovery to the extent indicated above, without prejudice to a later motion by the fiduciaries for discovery.