OPINION OF THE COURT
Charles J. Tejada, J.
Introduction
Pursuant to New York Civil Practice Law and Rules §§ 3102 and 3124, petitioner seeks an order directing Wachtell, Lipton, Rosen & Katz (Wachtell Lipton), a New York law firm, to produce certain documents demanded by petitioner but withheld by respondent on the grounds of attorney-client privilege and work product doctrine. Petitioner was represented by Benjamin Y. Kaufman, Art Leahy and Trisha McCormick of Milberg Weiss Bershad Hynes & Lerach. Noah B. Novogrodsky of Howard, Rice, Nemerovski, Canaday Falk & Rabkin in San Francisco appeared for the First Security Board of Directors. Michael A. Charish of Wachtell Lipton appeared for the firm.
On September 29, 2000, petitioner Leland Stenovich filed a class action complaint for breach of fiduciary duty in the Third Judicial District Court, County of Salt Lake, State of Utah, against several of the officers and directors of First Security Corporation (First Security). On September 17, 2001, petitioner Stenovich and others filed an amended complaint for breach of fiduciary duty. Petitioner alleges that under Utah law, First Security’s Board of Directors breached their fiduciary duties of care, candor and loyalty to the class by committing First Security to a merger with Wells Fargo & Co. (Wells Fargo) for an inadequate price.
Specifically, petitioner alleges, in part, in his complaint that: “notwithstanding the positive strategic consideration that had led to the Zions merger in the first instance, and notwithstanding the tens of millions of dollars spent on that merger, to spite *101 Zions’ management for what defendant Eccles perceived to be a personal affront, Eccles and the other defendants quickly initiated and pursued a merger with Wells Fargo, embracing a course exactly opposite to First Security’s prior long-term strategic plan,” that, “defendants ignored their fiduciary duty to First Security shareholders to obtain the best deal practicable under the circumstances,” that, “defendant Eccles * * * struck a deal that same day to sell First Security for a price substantially below what Eccles knew he could obtain from Zions,” that, “Eccles expressly conditioned the sale of First Security to Wells Fargo on securing for himself a payment for life of approximately $1,000,000 per year for little apparent work, a $500,000 per year payment to his wife should she survive him, a $1,500,000 birthday present bonus on Eccles’ 70th birthday, and options for 185,000 shares of Wells Fargo stock (compared with options for 60,000 shares under the defunct Zions agreement),” that, “the First Security Board of Directors approved and publicly announced the Wells Fargo merger, secure in the knowledge that Wells Fargo had agreed to indemnify each and all of the members of the Board of Directors against any breaches of fiduciary duty or other claims arising from their vote approving the Wells Fargo deal,” that, “while the Board of Directors allegedly received an ‘oral’ opinion from J.P. Morgan & Co. expressing the view that from a ‘financial point of view’ the Wells Fargo offer was fair, the Board of Directors knew J.P. Morgan was not independent and had not had sufficient time to reasonably evaluate the ‘fairness’ of the deal and knew that J.P. Morgan would be paid over $10 million for its ‘opinion,’ if — but only if — the Wells Fargo deal were completed,” and that, “J.P. Morgan ‘window dressed’ the acquisition price in First Security’s June 26, 2000 Proxy Statement-Prospectus to make the value of the transaction appear more attractive than it was.”
Wachtell Lipton acted as First Security’s counsel during the negotiations with Zions and Wells Fargo.
The instant action was initiated on January 19, 2002, when Utah State Court Judge Homer F. Wilkinson granted petitioner’s ex parte motion for a commission to obtain an order from the Supreme Court, State of New York, County of New York, to issue subpoenas for production of documents on Wachtell Lipton. On January 31, 2002, pursuant to CPLR 3102 (e), a Justice of the New York Supreme Court, New York County, ordered the issuance of petitioner’s subpoena duces tecum. Thereafter, on February 2, 2002, petitioner served the subpoena *102 duces tecum on Wachtell Lipton for the production of documents. On April 13, 2002, in response to petitioner’s subpoena duces tecum, Wachtell Lipton produced the privilege log, listing over 640 documents.
Before going to the merits of petitioner’s application, this court must address two threshold issues raised by respondent. First, respondent contends that this court should defer to a Utah court’s ruling on motions to compel disclosure because similar issues are raised in the Utah and New York motions and some of the documents at issue are the same. However, this court finds that the motions to compel filed by petitioner in Utah concerned Wells Fargo and First Security and not Wachtell Lipton. Moreover, “whether a particular document is or is not protected [by the attorney-client privilege or work product doctrine] is necessarily a fact-specific determination most often requiring in camera review.” (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 378 [1991] [internal citations omitted].) Nothing in the record before this court supports respondent’s contention that a Utah court’s determination of a motion to compel disclosure of documents withheld by Wells Fargo and First Security will address the evidentiary exceptions to the attorney-client privilege and work product doctrine asserted by Wachtell Lipton. Respondent merely asserts that the documents in question before a Utah court are similar or the same as those at issue in this proceeding, a fact, given respondent’s opposition to disclosure, which petitioner would have no way of determining.
Also, respondent’s contention that this court should defer to a Utah court fails to address the fact that the attorney-client relationship between First Security and Wachtell Lipton is based in New York, that Wachtell Lipton is a New York law firm, that the documents it is withholding are located in New York, and that respondent claims a privilege under New York law. It also fails to address whether any of these issues are before a Utah court. Lastly, this contention fails to acknowledge that the Utah court’s issuance of a commission to obtain an order from the Supreme Court, State of New York, County of New York, to issue subpoenas for production of documents, supports a conclusion that New York law applies. The commission, which was issued based on good cause was deemed “necessary and proper” to obtain documents from Wachtell Lipton. Clearly, the Utah court has ruled that it is not only necessary but “proper” for a New York court to issue a subpoena duces tecum and entertain any objection to disclosure under New York law. *103 Consequently, under New York law, the petitioner followed the proper procedure in filing his motion to compel in New York. It is well settled that when a subpoena issues from the State of New York, a motion to compel based on the subpoena must also be filed in New York, even when the underlying case is filed in another state. (Matter of Dauer v Prudential Ins. Co., 247 AD2d 350 [1st Dept 1998].)
Second, respondent asserts that, under a “choice of law” analysis, Utah law should apply. In legal disputes which involve contacts with different states, New York applies the law of the jurisdiction with the most significant or greater interest in having its law applied to the controversy. (Babcock v Jackson, 12 NY2d 473 [1963].) Two separate inquiries are thereby required to determine the greater interest: (1) what are the significant contacts and in which jurisdiction are they located, and (2) whether the purpose of the law is to regulate conduct or to allocate loss.
The guiding principle in making this inquiry is that in a choice of law analysis involving a standard of care, or laws that regulate conduct to prevent injuries from occurring, “the law of the place * * * will usually have a predominate, if not exclusive concern * * * because the locus jurisdiction’s interests * * * assume critical importance and outweigh any interests of common-domicile jurisdiction.” (Schultz v Boy Scouts of Am., 65 NY2d 189, 198 [1985] [internal quotation marks omitted].)
Here, the petitioner, a citizen and domiciliary of Utah, filed a class action complaint in the State of Utah alleging various breaches of Utah law by the officers and directors of First Security. First Security is a Utah corporation with its principal place of business in Utah. However, petitioner first obtained a commission and then filed the instant motion to compel in New York based on a subpoena issued by a New York Supreme Court Justice. That subpoena directed a New York based law firm to produce certain documents it claims are privileged. Furthermore, when a discovery dispute involves an attorney-client relationship with a New York attorney, New York privilege law applies. (Matter of Walsh v Herrick, 40 Misc 2d 413 [Sup Ct 1963].) Applying the guiding principle of Babcock, this court finds that the facts giving rise to the underlying claim and the contact between the parties concern the attorney-client privilege and work product doctrine and that these are conduct regulating principles. (Babcock v Jackson, 12 NY2d 473; Erie R.R. Co. v Tompkins, 304 US 64 [1938]; Tartaglia v Paul Revere Life Ins. Co., 948 F Supp 325, 326-327 [SD NY 1996].)
*104 Consequently, since this action was filed in New York, and the underlying claim and the contact between the parties concern conduct regulating principles, New York law applies to the instant motion before this court. (Klaxon Co. v Stentor Mfg. Co., 313 US 487 [1941].)
Discussion
CPLR 3101 (a) directs that there shall be “full disclosure of all matter material and necessary in the prosecution or defense of an action.” In determining when disclosure is appropriate, “[t]he test is one of usefulness and reason.” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968].) CPLR 3101 (a) embodies the policy determination that liberal discovery encourages fair and effective resolution of disputes on the merits, minimizing the possibility for ambush and unfair surprise.
Three categories of protected materials are found in the CPLR: privileged matter, absolutely immune from discovery (CPLR 3101 [b]); attorney’s work product, also absolutely immune (CPLR 3101 [c]); and trial preparation materials, which are subject to disclosure only upon a showing of substantial need and undue hardship in obtaining the substantial equivalent of the materials by other means. (CPLR 3101 [d] [2].) “The burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed, and. its application must be consistent with the purposes underlying the immunity.” (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 377; see generally The Attorney-Client Privilege and the Corporate Client: Where Do We Go After Upjohn?, 81 Mich L Rev 665 [1983].) Petitioner’s request for an order is considered with this in mind.
The court conducted an in camera review of the documents for which Wachtell Lipton claims one or more privileges.[1] A discussion of the court’s findings of fact, conclusions of law and determinations follow.
Sufficiency of Privilege Logs
Petitioner argues inter alia that “respondents have failed to satisfy their burden of establishing attorney-client privilege for all the documents on the Privilege Log.” CPLR 3122 (b) requires that the following information be included in a privilege log: (1) the type of document; (2) the general subject mat *105 ter of the document; (3) the date of the document; and (4) such other information as is sufficient to identify the document for a subpoena duces tecum. (Nab-Tern Betts v City of New York, 209 AD2d 223 [1st Dept 1994], citing People v Mitchell, 58 NY2d 368 [1983].)
With respect to the requirements of a privilege log, this court also finds instructive Bowne of N.Y. City, Inc. v AmBase Corp. (150 FRD 465, 474 [SD NY 1993]). In Bowne, the court provided that a privilege log typically will identify each document and the individuals who were parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure. “Other required information, such as the relationship between the individuals listed in the log and the litigating parties, the maintenance of confidentiality and the reasons for any disclosures of the document to individuals not normally within the privileged relationship, is then typically supplied by affidavit or deposition testimony.” (Bowne v AmBase Corp., 150 FRD at 474.) Having invoked the attorney-client privilege, Wachtell Lipton bears the burden of establishing that the privilege applies.
Judged by the aforementioned criteria, respondents have failed to carry their burden of proving that documents labeled 5, 8, 12, 13, 22, 29, 30, 36, 41, 64, 65, 67,[2] 84-89, 92, 102, 103, 201, 454, 455, 457, 550-553, 611-613 and 639 are privileged. The log indicates the author of these documents to be “WLRK.” This label in no way identifies who prepared these documents. These documents can only be protected by attorney-client privilege if the author of the documents is an attorney. Similarly, these documents are not protected as work product since there is no basis to conclude that the documents were prepared by an attorney. Based on the insufficiency of the respondent’s log, this court cannot determine whether the author of any documents labeled ‘WLRK” was an attorney or whether these documents were prepared solely by an attorney. Therefore respondent must provide petitioners with these documents.
Attorney-Client Privilege
In New York, the attorney-client privilege is governed by CPLR 4503, but it is also rooted in common law. CPLR 4503
“protects from disclosure confidential communica *106 tions made between the attorney * * * and the client in the course of professional employment * * * The party invoking the privilege must establish that the document in question reflects a communication between the attorney or his agents and the client or its agents, that the communication was made and retained in confidence, and that it was made principally to assist in obtaining or providing legal advice or services for the client. See, e.g., People v. Osorio, 75 N.Y.2d 80, 84, 550 N.Y.S.2d 612 (1989); Matter of Bekins Record Storage Co., 62 N.Y.2d 324, 329, 476 N.Y.S.2d 806, 809 (1984); People v. Mitchell, 58 N.Y.2d 368, 373, 461 N.Y.S.2d 267, 269 (1983). Since the privilege is intended to facilitate the rendition of legal representation, it does not cover communications with the attorney if intended to assist counsel in performing other services, such as the provision of business advice or the performance of such functions as negotiating purely commercial aspects of a business relationship. See, e.g., Rossi v. Blue Cross & Blue Shield of Greater New York, 73 N.Y.2d 588, 592-93, 542 N.Y.S.2d 508, 510 (1989); Matter of Bekins Record Storage Co., 62 N.Y.2d at 329, 476 N.Y.S.2d at 809.” (Bobian Inv. Co., N.V. v Note Funding Corp., 1995 WL 662402, *2, 1995 US Dist LEXIS 16605, *4-5 [Nov. 9, 1995] [internal quotation marks omitted].)
Since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. (Fisher v United States, 425 US 391, 403 [1976].)
A. Business Advice
Petitioner’s efforts to pierce Wachtell Lipton’s assertion of attorney-client privilege is based on the contention that Wachtell Lipton provided business rather than legal advice in connection with two separate mergers. As such, petitioner argues that Wachtell Lipton is prohibited from invoking the privilege against the petitioner shareholders because such advice was not primarily or predominately of a legal character. The fact that business advice is sought or even given does not automatically waive the privilege, “where the advice given is predominately legal, as opposed to business, in nature [.]” (United States v Davis, 131 FRD 391, 401 [SD NY 1990].) However, the privilege does not extend to business advice, even if provided by an *107 attorney. (Fine v Facet Aerospace Prods. Co., 133 FED 439, 444 [SD NY 1990].)
The evidentiary submissions by First Security on this motion include affidavits and a privilege log. The affidavits and certain entries on the privilege log reflect an adequate basis for concluding, at least initially, that some of the documents can fairly be characterized as coming within the attorney-client privilege. Respondent asserts that Wachtell Lipton was retained as outside counsel to provide legal advice to First Security concerning the proposed merger with Zions, the termination of the agreement with Zions, the negotiation, execution and closing of a merger agreement with Wells Fargo, and securities and related filings including public statements. Based on this court’s review of the withheld documents and respondent’s affidavits, there is no reason to believe that Wachtell Lipton was hired for any reason other than the one provided by respondent. Consequently, this court finds that documents, which respondent labeled as protected by attorney-client privilege[3] are primarily of a legal character and are therefore potentially protected absent any exception to the attorney-client privilege.
B. Drafts and Notes
Petitioner claims also that “preliminary drafts as well as attorney’s notes made while preparing the documents are not privileged.” Consequently, petitioner contends that the documents listed as such on respondent’s privilege log[4] are discoverable.
However, under New York law, the general rule is that “[a] draft document in the attorney’s file may[ ] be characterized as a communication from attorney to client in the course of *108 rendering legal advice, and insofar as there has been no disclosure of the draft’s contents to third persons, it is confidential.” (Matter of Bekins Stor. Co., 118 Misc 2d 173, 180 [Sup Ct 1983].) Additionally, “a draft document prepared by an attorney is privileged if it contains information provided in confidence by the client and subsequently maintained in confidence.” (Asset Value Fund Ltd. Parnership v Care Group, Inc., 1997 WL 706320, *6, 1997 US Dist LEXIS 17968, *16-17 [SD NY 1997].)
Since New York does not impose such a categorical limitation on draft documents as petitioner contends, this issue quite naturally narrows to the question of whether the privilege has been waived by the communication of the privileged information to a third party or whether confidentiality has been maintained. (Mason v Village of Ravena, 114 Misc 2d 487, 488 [Sup Ct, Albany County 1982].)
C. Waiver of the Attorney-Client Privilege
A client can waive the attorney-client privilege by placing the subject matter of counsel’s advice in issue and by making selective disclosure of such advice. (IMO Indus. v Anderson Kill & Olick, 192 Misc 2d 605, citing Orco Bank v Proteinas Del Pacifico, 179 AD2d 390 [1st Dept 1992].) “The waiver of the attorney-client privilege [] normally compels the production of other documents protected by the privilege which relate to the same subject.” (Matter of Baker, 139 Misc 2d 573, 576 [Sur Ct, Nassau County 1988].)
Petitioner alleges that Wachtell Lipton waived the attorney-client privilege when it voluntarily shared documents with third parties. However, Wachtell Lipton contends that waiver of the attorney-client privilege does not occur when documents are shared with a party who has a common interest. Notwithstanding, petitioner argues that Wachtell Lipton has failed to demonstrate that First Security shared a common interest with the third parties to whom it, Wachtell Lipton or both disclosed allegedly privileged information.
The common interest privilege applies to parties facing common problems in pending or threatened civil litigation. However, the privilege is limited to communications between counsel and parties with respect to legal advice in pending or reasonably anticipated litigation in which the joint consulting parties have a common legal interest. It does not protect business or personal communications. (Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd’s London, 176 Misc 2d 605 [Sup Ct 1998].)
*109 Here, the common interest with respect to JP Morgan and Goldman Sachs was exclusively of a commercial nature and did not concern the rendering of legal advice in pending or reasonably anticipated litigation. The affidavit of Brad D. Hardy, Esq., general counsel, corporate secretary, chief financial officer and executive vice-president of Corporate Services for First Security, and therefore a fiduciary of its shareholders, supports this conclusion. Specifically, the Hardy affidavit states, “Wachtell Lipton and First Security needed the benefit of JP Morgan’s expertise and perspective in order to fully understand and evaluate the position of Goldman Sachs and Zions, and also to assess the possible market reaction to legal strategies being considered by First Security.”
Consequently, based on Hardy’s characterization of JP Morgan and Goldman Sachs’ involvement with the business aspect of the merger, this court finds that JP Morgan and Goldman Sachs were consulted specifically for their business acumen and reputation in the financial industry. Moreover, neither of these parties are included among the respondents in this class action. Thus, this court finds that both Wachtell Lipton and First Security waived any privilege it had with respect to any documents shared with JP Morgan and Goldman Sachs, since they did not share a common legal interest.
Waiver of the attorney-client privilege normally compels the production of other documents protected by the privilege which relate to the same subject. (See generally, Matter of Baker, 139 Misc 2d at 577.) Consequently, this court finds that documents concerning proxy statements, e-mails regarding stock buy-back programs, merger time frames, fairness opinions, changes to the proxy statement, notification concerning preferred stock and First Security/Wells Fargo Proxy Statement Prospectus,[5] must also be provided to petitioner because they relate to the same subject matter as those documents shared with various third persons.[6]
Additionally, the deficiencies in respondent’s privilege log prevent this court from determining who, other than JP *110 Morgan and Goldman Sachs, received the documents in question. Since respondent bears the burden of establishing the existence of a privilege and any defense to waiver of that privilege, this court finds that documents 437, 438, 439, 574, 583, 608 and 640 are also discoverable since respondent’s privilege log failed to identify the affiliations of and relationships between the parties and the persons listed on the log.
Wachtell Lipton also asserts the agency privilege with respect to documents it shared with JP Morgan, Deloitte & Touche, Merrill Corporation and Equiserve. Under New York law, communications made between counsel and a client in the known presence of a third party are not privileged. (People v Osorio, 75 NY2d 80, 84 [1989].) However, communications made to counsel by one serving as an agent of either attorney or client to facilitate communications, will be privileged. (Id.) The scope of the privilege is not defined by the third parties’ employment or function; however, it depends on whether the client had an expectation of confidentiality under the circumstances. (Id.)
In this case, respondent argues that the services of third parties were reasonably necessary for Wachtell Lipton to carry out its responsibility of providing legal advice and services to First Security during merger negotiations. However, respondent does not contend that it instructed these third parties not to disclose the subject communications to persons unrelated to First Security or Wachtell Lipton. Instead, in respondent’s memorandum of law, they merely assert that, “to the best of the attorneys’ knowledge, these outside agents maintained the confidentiality of communications entrusted to their care.”
The respondent’s contention that “such an averment is sufficient to keep documents privilege” is not a substitute for respondent’s duty to establish facts sufficient to support the privilege and its purported defense to waiver of that privilege. Since respondent neglected to even identify the particular documents to which its agency argument is directed, in addition to failing to sufficiently establish that it had an expectation of confidentiality in the communications shared with third parties, this court finds that respondent failed to demonstrate the existence of circumstances justifying recognition of a valid agency defense to waiver of the attorney-client privilege. Therefore any documents shared with third parties, JP Morgan, Deloitte & Touche, Merrill Corporation and Equiserve *111 are available to petitioner as well as any and all related documents.[7]
Fiduciary Exception
Lastly, petitioner asserts that even if this court were to find that the withheld documents were protected under the attorney-client privilege, the petitioner is nonetheless entitled to these documents under the fiduciary exception to the attorney-client privilege. This exception was first enunciated in Garner v Wolfinbarger (430 F2d 1093 [5th Cir 1970], cert denied 401 US 974 [1971]). In Garner, the Fifth Circuit held that a corporation’s right to assert the attorney-client privilege against its shareholders, in a shareholder derivative action where the corporation is in suit against its stockholders on charges of acting “inimically to stockholders interests,” is “subject to the right of stockholders to show why it should not be invoked in the particular instance.” (Id. at 1103-1104.) The court reasoned that management and shareholders had a “mutuality of interest” in management’s “freely seeking advice when needed and putting it to use when received” (id. at 1101), and that management did not manage for itself: “the beneficiaries of its actions are the stockholders.” (Id.) Thus, “management judgment must stand on its merits, not behind an ironclad veil of secrecy which under all circumstances preserves it from being questioned by those for whom it is, at least in part, exercised.” (Id.) The court remanded the case to the district court for a finding whether there was good cause to prevent the invocation of the privilege. (See Garner v Wolfinbarger, 56 FED 499 [SD Ala 1972] [on remand, finding good cause for disclosure].)
Here, as in Garner, respondent management and petitioner shareholder had a mutuality of interest in respondent management freely seeking advice when needed and putting it to use when received. Respondent management did not manage for itself; the beneficiaries of its actions are the petitioner stockholders. Thus, respondent management judgment must stand on its merit and not behind an ironclad veil of secrecy which under all circumstances preserves it from being questioned by those for whom it was, at least in part, exercised.
Further, respondent implies that the absence of New York case law concerning the application of the fiduciary exception *112 in nonderivative suits supports a determination that it is not applicable to such suits. Although, the application of the fiduciary exception to the attorney-client privilege specifically in a nonderivative suit appears to be a question of first impression in New York, this court concludes that the absence of authority in this jurisdiction is not a bar to its application in this suit.
The fiduciary exception to the attorney-client privilege may apply when there is a fiduciary relationship between the party seeking disclosure and the party who sought legal advice for the party seeking disclosure. It applies because of the nature of the relationship and not because of the context in which that relationship arose. Although the exception is not absolute, once certain conditions exist, it has been applied to a variety of relationships that are fiduciary in nature. (See Nellis v Air Line Pilots Assn., 144 FRD 68, 71 [ED Va 1992] [an action against a union for breach of its duty of fair representation and other claims where the plaintiff union members moved for production of certain documents withheld as privileged. The Nellis court determined that documents involving legal advice provided to union officials by in-house and outside counsel on matters directly related to the interests of union members were within the fiduciary-beneficiary exception to the attorney-client privilege]; see also In re Sunrise Sec. Litig., 130 FRD 560 [ED Pa 1989] [law firm with conflicting fiduciary duties to itself and client]; Helt v Metropolitan Dist. Commn., 113 FRD 7 [D Conn 1986] [pension plan beneficiaries’ sex discrimination action]; Petz v Ethan Allen, Inc., 113 FRD 494 [D Conn 1985] [ERISA Plan]; Quintel Corp., N.V. v Citibank, N.A., 567 F Supp 1357 [SD NY 1983] [bank acting as fiduciary for purchaser in land acquisition transaction]; Washington-Baltimore Newspaper Guild, Local 35 v Washington Star Co., 543 F Supp 906 [D DC 1982] [involving a breach of fiduciary duty against an employer/trustee under ERISA, where access to privileged communication was given without recourse to the Garner good-cause analysis]; Donovan v Fitzsimmons, 90 FRD 583 [ND 111 1981] [union ERISA pension fund]; In re Baldwin-United Corp., 38 BR 802 [SD Ohio 1984] [bankruptcy creditors’ committee].)
New York case law also supports a conclusion that the controlling feature for the applicability of this exception is whether the legal advice was sought for the benefit of the party seeking disclosure as a result of a fiduciary relationship rather than the context in which the fiduciary relationship arose. (Hoopes v Carota, 74 NY2d 716, 717-718 [1989]; explained by AMBAC Indem. Corp. v Bankers Trust Co., 151 Misc 2d 334, 336 [Sup *113 Ct 1991]; Matter of Baker, 139 Misc 2d 573 [Sur Ct, Nassau County 1988].) Thus, when a fiduciary retains an attorney to advise him or her in the exercise of his or her fiduciary responsibilities, his or her communications with that attorney are not absolutely protected from inquiry by the beneficiaries for whom the fiduciary performs. (Lawrence v Cohn, 2002 WL 109530, *3, 2002 US Dist LEXIS 1226, *9 [SD NY 2002].)
Moreover, the Fifth Circuit, which created the Garner doctrine, made it clear that the fiduciary-beneficiary exception was not limited to derivative suits by current shareholders. (Garner v Wolfinbarger, 430 F2d 1093,1097 n 11 [5th Cir 1970]; see In re International Sys. & Controls Corp. Sec. Litig., 693 F2d 1235, 1239 n 1 [5th Cir 1982]; see also Cohen v Uniroyal, Inc., 80 FED 480 [ED Pa 1978] [Garner applied in action where plaintiff stockholders bring a class action].)
Given the above, the application of the fiduciary/beneficiary exception in relation to the instant class action is not unwarranted.
Furthermore, disclosure under the CPLR is mandated if the material requested is relevant. (Allen v Crowell-Collier Publ. Co., 21 NY2d 403 [1968]; see Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C310L5.) In Allen, the Court of Appeals interpreted the New York CPLR phrase “material and necessary” to mean nothing more or less than “relevant,” saying that the phrase must be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay.
That the New York statutory attorney-client privilege is not absolute is axiomatic, since this privilege “constitutes an ‘obstacle to the truth-finding process,’ the invocation * * * should be cautiously observed to ensure its application is consistent with its purpose.” (Matter of Jacqueline F., 47 NY2d 215, 219 [1979].) Consequently, this privilege is subject to specific limiting rules and a host of exceptions. The privilege may also yield to a strong public policy requiring disclosure. (Matter of Priest v Hennessy, 51 NY2d 62, 69 [1980].) Therefore, respondent’s assertion that the lack of authority for the application of the fiduciary exception in nonderivative suits automatically bars it application, is unpersuasive.
Respondent asserts collaterally that even if the fiduciary exception were to apply, petitioner has not shown “good cause” to require production of documents that are governed by the attorney-client privilege. In New York, the application of the *114 fiduciary exception is governed by Hoopes v Carota (142 AD2d 906 [3d Dept 1988]), where the Appellate Division, Third Department, found that beneficiaries of a trust established good cause to compel disclosure of otherwise privileged attorney-client communications in a suit against the trustee for alleged self-dealing and other misconduct. In Hoopes, the beneficiaries of a trust commenced an action to remove the named trustee amid allegations that the trustee proposed and obtained board approval for salary increases for himself and another person, obtained approval for long-term employment contracts for various corporate officers and discouraged merger negotiations that were alleged to have been favorable for stockholders but less favorable to management. The Court determined that the salient factor in that case was that defendant acted both in his capacity as a trustee and as a corporate officer and director and was therefore the fiduciary of the plaintiff beneficiaries.
The Court held that good cause for disclosure of otherwise privileged information had been shown, specifically holding that: (1) plaintiffs may have been directly affected by any decision the trustee made on his attorney’s advice; (2) the information sought was highly relevant to and may be the only evidence available on whether defendant’s actions respecting the relevant transactions and proposals were in furtherance of the interests of the beneficiaries of the trust or primarily for his own interests in preserving and promoting the rewards and security of his position as corporate officer; (3) the communication apparently related to prospective actions by defendant, not advice on past actions; (4) plaintiffs’ claims of defendant’s self-dealing and conflict of interests were at least colorable; and (5) the information sought was not only relevant, but specific. (Hoopes v Carota, 142 AD2d at 910-911.)
The allegations of the plaintiffs in Hoopes regarding the breach of fiduciary duty in many ways mirror the allegations of petitioner in this case. As in Hoopes, petitioner and others were undoubtedly directly affected by any decision that First Security’s Board of Directors made. This court’s in camera review found that many of the documents withheld by Wachtell Lipton concern the specific merger negotiations at issue.[8] The information sought is highly relevant and specific and may be the only evidence available that would address whether *115 respondent was acting in furtherance of its own benefit as petitioner alleges; petitioner’s claim is certainly colorable and the possibility that this evidence is available from another source is highly doubtful since Wachtell Lipton provided advice, guidance and other services concerning the merger agreement with Zions, the merger agreement with Wells Fargo and other corporate governance issues.
Under the circumstances presented here, this court finds that petitioner has established the requisite good cause for disclosure and, consequently, the communications between First Security’s Board of Directors and Wachtell Lipton regarding the specific details of merger negotiations should not be withheld from petitioner and others for whose benefit, at least in part, legal advice and counsel were sought.
Consequently, the fiduciary exception to the attorney-client privilege clearly applies to documents dated before April 9, 2000, which is when First Security’s Board of Directors voted to approve the merger agreement with Wells Fargo. These communications were made before litigation began and had been unrelated to any ongoing dispute between First Security’s shareholders and management. Thus, these documents must be disclosed.[9]
However, the exception has not been applied to communications made after the fiduciary learns that litigation is anticipated or has been commenced. Therefore, documents containing legal advice and counsel rendered after the subject merger may be protected from disclosure.[10]
Work Product
In its memorandum of law, respondent asserts that all of the documents listed on its privilege log are protected from disclosure under the attorney work product doctrine because “they were prepared by or for counsel in anticipation of litigation.”[11] 11 Respondent also contends that, “even if some of the documents at issue may also have served a business *116 purpose, the documents were drafted first with First Security’s legal options in mind.” However, “[a]s a general matter, the work-product rule applies only to documents prepared principally or exclusively to assist in anticipated or ongoing litigation. It follows, then, that if a party prepares a document in the ordinary course of its business, it will not be protected even if the party is aware that the document may also be useful in the event of litigation.” (Martin v Valley Natl. Bank of Ariz., 140 FED 291, 304 [1991] [internal citations omitted].)
In its submissions to this court, it was incumbent upon respondent to prove that the disputed records should be held immune from discovery, and the mere assertion that they constitute an attorney’s work product or material prepared in anticipation of litigation will not suffice. (Chemical Bank v National Union Fire Ins. Co. of Pittsburgh, Pa., 70 AD2d 837 [1st Dept 1979].) New York courts have uniformly given the work product doctrine a narrow construction. (Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd’s London, 176 Misc 2d 605 [Sup Ct, NY County 1998], citing Chemical Bank v National Union Fire Ins. Co., 70 AD2d 837, 838 [1st Dept 1979].) The burden of demonstrating that particular records are immune from discovery is on the party asserting such immunity and this burden is so placed by virtue of the strong policy in favor of full disclosure. (Koump v Smith, 25 NY2d 287, 294 [1969].)
This court’s in camera review found that most documents designated by respondent as work product were designed to serve more than one purpose and therefore do not constitute material prepared principally or exclusively to assist in anticipated or ongoing litigation. Under New York law, although the prospect of litigation may have been cogent at the time, such “[m]ulti-motived reports do not warrant the immunity if litigation is but one of the motives.” (Chemical Bank v National Union Fire Ins. Co. of Pittsburgh, Pa., 70 AD2d at 838; see Westhampton Adult Home v National Union Fire Ins. Co. of Pittsburgh, Pa., 105 AD2d 627, 628 [1st Dept 1984]; see also Mavrikis v Brooklyn Union Gas Co., 196 AD2d 689, 690 [1st Dept 1993].) Consequently, respondent has failed to prove that documents drafted to comply with SEC rules of disclosure and other regulatory requirements, among other things, were prepared in anticipation of litigation.
*117 Thus, mindful of the liberal construction to be accorded disclosure provisions of the CPLR, this court finds that documents labeled 3, 4, 7, 8, 9, 13-15, 20-23, 25-35, 40, 41, 43, 46, 47, 49, 50-58, 59, 62-65, 67-69, 71, 72, 74, 78, 103, 116, 121, 123-126, 136, 153, 177, 178, 196-199, 203, 205, 208, 209, 252, 253?, 262, 292, 299-302, 306-308, 310, 311, 316, 321, 322, 378, 382-384, 427, 449, 475, 478, 479, 481, 483, 499, 500, 521-524, 531, 538, 542, 543, 547, 548, 557, 579-582, 635, 636 and 642 are not immune from discovery because they were not prepared in anticipation of litigation.[12]
Furthermore, the term attorney’s work product is self-explanatory (Carmody-Forkosch, NY Prac § 630, at 579) and “the attorney cannot convert * * * the independent work of another, already performed, into his own.” (Montgomery Ward Co. v City of Lockport, 44 Misc 2d 923, 925 [Sup Ct, Niagara County 1964].) This court found that document 15 is a copy of an article that was reprinted in a Salt Lake City newspaper from a Web site entitled TheStreet.com, which reported on the “creative use of fairness opinions” in the Zions-First Security merger. This news article, which was not written by Wachtell Lipton personnel, but by the president of a New York City based financial organization, can hardly be said to have been prepared in anticipation of litigation by Wachtell Lipton. Similarly, document 80 is a photocopy of the Ninth Edition, Arthur Anderson Accounting for Business Combinations: Interpretations of APB Opinion No. 16 Business Combinations, and also does not qualify as attorney work product. Thus, documents labeled 15 and 80 must therefore be disclosed to petitioner.
However, complying with the statutory mandate of CPLR 3101 (d) (2), that this court protect the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning litigation, this court finds that documents labeled 19, 24, 37, 38, 42, 45, 73, 171, 212, 213, 252, 253, 261, 298 and 312 are immune from discovery.
Order
For all of the reasons set forth above, the court hereby enters the following order: Within 30 days of this order, respondent *118 shall produce to counsel for petitioner all documents listed in the respondent’s privilege log except for documents labeled 19, 24, 37, 38, 42, 45, 73, 171, 212, 213, 252, 253, 261, 298 and 312.

. Given the large number of documents listed on respondent’s privilege log (642), a synopsis of the court’s findings of fact as to each document is contained in the findings of fact document log.

. Documents 64, 65 and 67 appear to be the same as documents labeled 8 and 10. Therefore, documents 8 and 10 must also be provided to the petitioners. Also, document 92 appears to be the same document as 96 and must also be made available to the petitioners.

. 1, 4, 9,16, 19, 24, 25, 26, 28, 31-35, 37-39, 42, 43, 48, 50, 52, 56, 58, 59, 62, 66, 68, 71-73, 93, 94, 97-101, 104-107, 109-115, 117, 119, 121, 122-125, 127-141, 142-163, 164-180, 181-193, 195, 197, 210-219, 226, 228, 230, 234-236, 237-241, 243-245, 248-250, 253, 254, 257-269, 271-275, 278, 283, 285-305, 306-313, 315-319, 322-332, 333-342, 344-353, 356, 358, 360-381, 384, 385, 389, 390, 392-407, 409-414, 417-436, 440, 441, 450-453, 458-461, 463-471, 473-476, 478, 480-494, 495-497, 499, 501-505, 506-510, 512-514, 518, 520-542, 543, 545, 547, 549, 554, 562, 569, 571, 572, 573, 585, 587, 589-591, 593, 597, 598, 599, 600, 602, 603, 608, 610, 614-616, 619-637, 640 and 642.

. 2, 4, 7-9, 12-15, 21, 35, 39-40, 42, 45, 55, 58-59, 64-65, 67, 69-71, 74, 90, 93-94, 101, 107, 114, 116, 119, 121, 144, 154, 156, 159, 162, 163, 174, 177-178, 181, 191-192, 199-200, 205, 220, 227, 234, 249-250, 258-259, 263, 265, 273-275, 299, 327, 331, 337, 374, 381, 383, 384, 386, 391, 404, 406, 422, 430, 433, 435-436, 441-451, 456-462, 464, 467-468, 472-476, 482-484, 489-496, 499-500, 524-536, 539-543, 545-553, 556-564, 566-567, 570-575, 579-597, 600-608, 616-623, 625, 627-640 and 642.

. 1, 4, 9, 59, 69, 70, 71, 121, 167, 169, 175, 179, 181, 182, 186, 187, 189, 194, 210, 216, 217, 220, 221, 223, 300, 301, 372, 379, 385, 386, 389, 390, 391, 393, 394-399, 401, 403, 410, 413, 416, 418, 419, 420, 421, 434, 435, 436, 437, 438, 439, 440, 447, 459-461, 499, 531, 532, 533, 542, 543, 544, 545, 547, 548, 554, 557, 565, 573, 574, 575, 576, 577, 578, 579-581, 582-596, 597-601, 607, 608, 625, 627-638 and 640-642.

. 51, 101, 199, 299, 415, 437, 447, 511, 547, 556, 566, 570, 600, 625, 626, 628, 629, 631, 632, 634, 635 and 637.

. According to respondent’s privilege log these documents are: 13, 51, 101, 196, 199, 256, 266, 299, 415, 437, 439, 447, 511, 547, 548, 556, 566, 570, 574, 583, 600, 625, 626, 627, 628, 629, 631, 632, 634, 635 and 640.

. See documents numbered 74, 90, 91, 97-99, 104-105, 107, 110-116, 126-128, 142, 152, 181, 187, 195, 199, 206, 208-209, 232-233, 238, 247, 249-250, 254, 263, 265-266, 271-272, 318, 327-328, 331, 336, 348, 377, 412, 414, 419- *115 421, 424-425, 429, 433, 437-440, 447, 450, 464-465, 484, 487, 500, 502, 515-517, 519, 530, 607 and 612-615.

. These documents are: 74, 90, 91, 97-99, 104-105, 107, 110-116, 126-128, 142, 152, 181, 187, 195, 199, 206, 208-209, 232-233, 238, 247, 249-250, 254, 263, 265-266, 271-272, 318, 327-328, 331, 336, 348, 377, 412, 414, 419-421, 424-425, 429, 433, 437-440, 447, 450, 464-465, 484, 487, 500, 502, 515-517, 519, 530, 607 and 612-615.

. These documents are: 19, 24, 37, 38, 42, 45, 73, 171, 212, 213, 252, 253, 261, 298 and 312.

. Respondent asserts the work product privilege for documents numbered 1, 3-4, 6, 15, 17-53, 55, 57-69, 71-79, 102-103, 116, 121, 123-126, *116 136-153, 171, 177-178, 196-199, 203, 205, 208-209, 231, 252-253, 262, 284, 292, 298-302, 306-308, 310-313, 316, 321-322, 378, 382-384, 427, 449, 475, 478-479, 481, 483, 499-500, 521-524, 531, 538, 542-543, 547-548, 557, 579-582, 619, 635-636 and 642.

. Although discussed in respondent’s memorandum of law in opposition to petitioner’s order to show cause, the following documents were not listed on respondent’s log and therefore this court did not rule on the availability of these documents to the petitioner: 6, 11,17, 18, 44, 48, 60, 61, 75-77, 79, 231, 284 and 619.