OPINION OF THE COURT
Lee L. Holzman, J.
In this accounting proceeding, the objectants, who filed their objections after the return date of this motion, move pursuant to CPLR 3124 to compel the two surviving trustees of Trust B to produce certain documents. Trusts A and B were created under the residuary clause of the decedent’s will which was admitted to probate in 1956. The trustees, who petitioned for the judicial settlement of their account for Trust B for the period from February 18, 1981 to July 31, 2006, oppose the motion, and cross-move pursuant to CPLR 3103 for a protective order. A substantial portion of the relief requested in both the motion and cross motion was rendered academic by the objections that have now been filed and the agreement of the parties with respect to many of the documents originally requested.
The decedent died in 1955, survived by his spouse Rose and two sons, Alan and Marvin. Marvin died in 1976, and Rose died in 2005. The decedent’s residuary estate is bequeathed in equal shares to Trust A, a marital deduction trust, and Trust B. Rose and the accounting parties, Alan and Hirschell E. Levine, an accountant, served as the trustees of both trusts from 1981 until Rose’s death. The parties acknowledge that the trusts were funded primarily with the proceeds from the sale of the decedent’s interest in Marval Poultry which was sold in 1981 for $20 million.
Trusts A and B both provide that Rose is to receive the income for her life and that principal may be invaded for her benefit “to defray the expense of any sickness, physical or mental, accident or other emergency of any nature whatsoever”; however, Trust A principal must be exhausted before Trust B principal could be invaded. Rose was granted a power of appointment over the remainder of the Trust A principal, and after Marvin’s death, she exercised the power in favor of her surviving son Alan. The remainder of Trust B is bequeathed in equal shares to Marvin and Alan and, if either son predeceased, his share was to be paid pursuant to that son’s power of appointment, and upon the failure to exercise the power, to the issue of that predeceased son.
Marvin predeceased Rose without exercising the power of appointment; therefore, upon her death, one half of the remainder *782 of Trust B passed to Marvin’s children, all of whom assigned their interest to their family trust, the Poster Family Irrevocable Trust. The objectants herein are the trustees of that trust and Marvin’s children, its beneficiaries. The crux of their objections is that the trustees of Trust B exercised an investment philosophy and strategy that was intentionally detrimental to the Trust B remainder interest by investing exclusively in income-producing assets rather than investing to create principal appreciation as well as income. The movants claim that because Alan knew that upon Rose’s death he would receive not only her testamentary assets but also the principal of Trust A and the Rose Poster Trust, a lifetime trust created by Rose, he, without objections from his cotrustees, wanted to generate more income from Trust B than his mother would ever need so that the income she did not expend would eventually pass to him. The movants further contend that during Rose’s life she deposited the income from Trust B into the Rose Poster Trust. The trustees assert that in light of Rose’s age and medical condition, the Trust B investment policy was prudent and in accord with carrying out the decedent’s intent.
The trustees contend that the disclosure requested in items 14, 21, 30 and 34 is protected by the attorney-client privilege and need not be produced. The movants contend that the trustees cannot rely upon the attorney-client privilege for any document that was prepared prior to the effective date of CPLR 4503 (a) (2).
The trustees assert that the documents requested in items 37, 38, 43, 44, 45, 48 and 55 are irrelevant and will not lead to the discovery of admissible evidence as those documents relate to either Trust A or the Rose Poster Trust rather than Trust B, the subject of this accounting proceeding. The movants counter that they are entitled to request any information that is relevant to the more than 25-year period covered by this accounting proceeding. They assert that the requested information with regard to Trust A or the Rose Poster Trust is relevant to ascertain both the extent to which Rose needed Trust B to produce only income and whether the trustees used a different investment policy for Rose’s benefit with respect to Trust A and the Rose Poster Trust than was used for Trust B.
Article 31 of the CPLR applies to disclosure in surrogate’s court proceedings (see SCPA 102). Although the words “material and necessary” are to “be interpreted liberally,” the broad discretion granted to the court “is not unlimited,” and the *783 operative test as to what is discoverable “is one of usefulness and reason” (see Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]; see also Matter of Schneier, 50 AD2d 715 [1975]). Disclosure that is “material and necessary” relates to “any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity” (Allen v Crowell-Collier Publ. Co., 21 NY2d at 406). Thus, as is the case with so many areas of the law, the court employs a balancing test. In discovery applications, the court balances the likelihood and the extent to which requested disclosure will assist the moving party in preparing for trial against the burden that will be imposed upon the other party should the requested disclosure be ordered.
The first issue addressed is the applicability of the attorney-client privilege to the request for “back-up time records” for bills submitted by Schulte Roth (item 14) and for all documents concerning communications between the trustees and counsel regarding income distributions or investments with respect to Trust A as well as other communications between them with respect to Trust A (items 21, 30, 34). CPLR 4503 (a) (2) became effective upon its enactment on August 20, 2002 and clarified issues for which there was no prior statutory directive. The statute provides that “[f]or purposes of the attorney-client privilege,” and “in the absence of’ a contrary agreement between the personal representative and counsel, “[n]o beneficiary of the estate is, or shall be treated as, the client of the attorney,” and that the “fiduciary relationship between the personal representative and a beneficiary of the estate does not by itself constitute . . . any waiver of the privilege for confidential communications” between the attorney and the personal representative (CPLR 4503 [a] [2] [A] [i], [ii]).
The movants do not cite any authority in support of their contention that privileged communications under CPLR 4503 (a) (2) must be disclosed after the enactment of that statute because the communications occurred prior to its enactment. The movants apparently rely upon Matter of Baker (139 Misc 2d 573 [1988]) and its progeny for the proposition that, prior to the enactment of CPLR 4503 (a) (2), a fiduciary was obligated to disclose to an estate beneficiary the advice of counsel with respect to matters affecting the administration of that estate, subject to the limitation that disclosure was not required where the material was prepared in connection with pending or anticipated litigation. Here, as the movants are not beneficia *784 ríes of Trust A, they are not entitled under Baker to confidential communications between the fiduciary and counsel with respect to the administration of Trust A. Furthermore, assuming, arguendo, that Baker does reflect the law applicable prior to the enactment of CPLR 4503 (a) (2), notwithstanding the lack of any appellate authority approving or disapproving of its holding, it does not necessarily follow that after the statute was enacted an attorney can thereafter be compelled to disclose during discovery or at trial any document that is clearly now considered a confidential communication between that attorney and a fiduciary of an estate. Prior to ordering the disclosure requested by the movants the court would have to consider both the underlying purposes of the attorney-client privilege and whether or not in the context of this proceeding the disclosure requested relates to an evidentiary issue which will be governed by the law in effect at the time of trial.
Accordingly, the court rules that the trustees are not required to produce any of the documents claimed to be subject to the attorney-client privilege. Nonetheless, the trustees may not use the privilege as a shield, and then, at trial, surprise the movants by using any of the requested documents as a sword. Consequently, the trustees are precluded from introducing at trial any of the documents requested in items 14, 21, 30 and 34 unless the document is provided to the movants by the date when all disclosure is to be completed.
The first two items that the trustees contend are irrelevant are items 37 and 38, requesting financial statements, annual reports, bank statements, brokerage statements and tax returns or any other financial documents for the Rose Poster Trust from the date of its inception to the date of Rose’s death. The court agrees with the movants that to the extent that the documents requested reveal that Alan, as trustee, administered the Rose Poster Trust differently than Trust B, or that he was aware of substantial assets and income other than from Trust B in which Rose had an interest, such information might assist the movants in preparing for trial. On the other hand, the court agrees with the trustees that the movants’ discovery demands with regard to the Rose Poster Trust are too broad (see Matter of Bird, 100 AD 2d 784 [1984]). This is not an accounting proceeding for that trust. Furthermore, the movants’ submissions herein reflect that they already have substantial knowledge about many of Rose’s assets. Accordingly, the only documents that the trustees must produce with respect to items 37 *785 and 38 are the tax returns and annual statements for the Rose Poster Trust for the period encompassed by the Trust B accounting.
Item 43 requests financial statements and tax returns for Arnel Investment Corp. for the period from the date of death of Marvin through the date of death of Rose. As it is conceded that assets of Marval that were not sold were transferred to Arnel, and that Trust B is entitled to a one-half interest in all of the assets of Marval, the movants are entitled to the requested documents for Arnel; however, they are not entitled to documents for any period prior to February 18, 1981.
Item 44 requests financial statements and tax returns for Rose-Al Corp. for a period of approximately 30 years. Item 45 requests copies of all bills and statements from any attorneys, accountants or financial advisors representing Rose Poster for the same period as item 44. Although it appears that the Rose Poster Trust had an interest in Rose-Al, this case will never be ready for trial if the movants insist on inspecting all financial records for every entity in which Rose either had a direct or indirect interest as well as all of Rose’s dealings with attorneys, accountants and financial advisors. The court finds that the requests are too broad, and even if the responses thereto could provide any relevant information, it would, at best, be cumulative, as the trustees have produced more than 35,000 pages of documents to date. Accordingly, the documents requested in items 44 and 45 need not be produced.
Item 48 requests any and all correspondence between Hirschell E. Levine, Eisner & Lubin, LLP or any other accountant or financial advisor and Rose Poster with respect to gifts, estate planning or gift tax returns from the date of Marvin’s death to Rose’s death. It is possible that the knowledge of Hirschell E. Levine, a trustee of Trust B, with respect to Rose’s ability or desire to make gifts might assist the movants in preparing for trial. Accordingly, the only documents requested in item 48 that are to be produced are correspondence between Rose and either Hirschell E. Levine or an entity with which he was associated relating to gifts contemplated by Rose or any gift tax returns for Rose prepared or filed by Levine or such entity for the period from February 18, 1981 to the date of Rose’s death.
Item 55, requesting all correspondence including, but not limited to, e-mails between Eisner & Lubin, LLP and the Poster family office in connection with the preparation of the accounting or any other records in connection therewith, is overly broad *786 and does not appear to be relevant to any of the objections interposed in this proceeding. Accordingly, those documents do not have to be produced.
In the order to be settled hereon granting in part, and denying in part, the motion and cross motion in accord with the determination rendered herein, the parties may also provide an agreed-upon date by which all disclosure shall be completed. After that date, any party may have this matter placed upon the court’s ready for trial calendar upon compliance with Uniform Rules for Surrogate’s Court (22 NYCRR) §§ 207.29 and 207.30. In the event that the parties cannot agree upon a date by which all disclosure shall be completed, the order to be settled hereon should set forth an agreed-upon regular calendar date of the court at which any remaining issues as to disclosure shall be discussed and resolved.